UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. CV 24-3571 FLA (PVCx) | Date: June 23, 2025 |
| Title  Asha Daniels v. Big Grrrl Big Touring, Inc., et al. | |

Present: The Honorable Pedro V. Castillo, United States Magistrate Judge

| Marlene Ramirez | None |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None | None |

**PROCEEDINGS:   [IN CHAMBERS] ORDER GRANTING DEFENDANT'S MOTION TO COMPEL[1] (Dkt. No. 48, 49, 50)**

### Introduction

In this discovery dispute, Defendant Big Grrrl Big Touring, Inc. ("BGBT") seeks production of an unredacted text message chain between Plaintiff Asha Daniels and three nonparty witnesses.  Plaintiff refuses production citing attorney-client privilege.  This position is premised on the fact that (1) the three nonparties are actively litigating a lawsuit in Los Angeles Superior Court against Defendant with claims like those raised in this suit and (2) that the nonparties share the same attorney as Plaintiff.  In order to resolve the dispute, the Court ordered the parties to file short briefs summarizing the dispute and the law, which they did.  (*See* Pl.'s Br., Dkt. No. 50; Def.'s Br., Dkt. No. 49).

---

[1] Because of the short time frame in which this discovery dispute was brought to the Court's attention, the Court did not order a formal motion to compel via a joint stipulation pursuant to Local Rule 37 and instead ordered the parties to submit separate briefs.  (*See* Dkt. No. 48).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   CV 24-3571 FLA (PVCx)                                   Date:  June 23, 2025

Title   Asha Daniels v. Big Grrrl Big Touring, Inc., et al.

By Plaintiff's description, she and the nonparties discussed communications they had with their shared attorney in the text message chain.  Defendant objects to Plaintiff's privilege claim by arguing that these messages constitute third-party disclosures, which destroy the attorney-client privilege.  But Plaintiff responds that, under the common interest Doctrine, no third-party disclosure occurred because all four participants in the text message chain share the common legal goal of defeating Defendant in similar litigations and have the same attorney.

The Court disagrees.  After an *in camera* review of the messages, the Court concludes that, because the participants shared only a generalized goal of prevailing in their separate lawsuits—and not a particularized, concrete common legal interest—the remaining messages, even if privileged, are not protected by the common interest doctrine.[2]

## Background

On August 1, 2023, nonparties Arianna Davis, Noelle Rodriguez, and Crystal Williams—dancers who all previously worked for Melissa Jefferson (known professionally as "Lizzo")—sued Defendant and Lizzo,[3] generally alleging claims

---

[2] Pursuant to the Court's directive, Plaintiff submitted unredacted copies of the messages for review by the Court via an email to chambers.  (*See* Dkt. No. 48).  Now, to ensure that the record is complete, the Court orders Plaintiff to file the unredacted documents *in camera* pursuant to Local Rule 79-6.

[3] This case includes one additional defendant who was not named as a defendant in this suit.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   CV 24-3571 FLA (PVCx)                                    Date:  June 23, 2025

Title         Asha Daniels v. Big Grrrl Big Touring, Inc., et al.

stemming from a hostile work environment.  *Arianna Davis, et al. v. Big Grrrl Big Touring, Inc., et al.*, L.A. Super. Ct., 23SMCV03553.

On September 21, 2023, Plaintiff initiated this lawsuit against Defendant, Lizzo, Carlina Gugliotta, Amanda Nomura, and ten Doe defendants.[4]  (Dkt. No. 1 at 1–2). [5]  The case was removed from Superior Court to this Court on April 30, 2024.  (*See* Notice of Removal, Dkt. No. 3).  In her Second Amended Complaint, Plaintiff seeks damages for alleged abuses she suffered while working as a designer for Lizzo and her touring company Defendant.  (*See* Dkt. No. 3-1 at 326–69).  Attorney Ronald L. Zambrano represents the plaintiffs in both actions.  ("Pl. Br.," Dkt. No. 50 at 2).

Defendant served Plaintiff with requests for production that sought all communications between Plaintiff and the three nonparties on June 6, 2024.  ("Def. Br.," Dkt. No. 49 at 2).  Plaintiff did not—by Defendant's description—provide responsive documents.  (*Id.*).

A year later, between June 2 and June 5, 2025, Defendant deposed the three nonparties.  (*Id.*).  In response to related subpoenas, they produced several strings of text messages and social media chats between them and Plaintiff.  (*Id.* at 2–3).  The messages were partially redacted.  (*Id.* at 3).  The corresponding privilege log asserted that the messages were about conversations with their shared attorney.  (*Id.*).  The nonparties later testified, according to Defendant, that the messages were meant to show support for each other and that legal advice was not discussed.  (*Id.*).

---

[4] The Court dismissed the majority of the claims brought against Lizzo and other Defendants on December 2, 2024.  (Dkt. No. 28).

[5] The Court uses page numbers generated by CM/ECF as shown in the blue ribbon at the top of each filing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.   CV 24-3571 FLA (PVCx) | Date:  June 23, 2025 |
| Title   Asha Daniels v. Big Grrrl Big Touring, Inc., et al. | |

On June 16, 2025, the parties requested an informal discovery conference to discuss the redactions.  (Dkt. No. 46).  The Court held the conference two days later on June 18, 2025.  (Dkt. No. 48).  During the conference, Plaintiff claimed that the redacted messages were privileged because they included references to conversations with Mr. Zambrano.  She argued that these disclosures were appropriate because all four text message string participants were covered by the common interest doctrine.  Defendant claimed that no privilege likely existed for the redacted messages in which text participants shared messages of support.  Defendant also argued that there was no common interest between Plaintiff and the nonparties.

The Court ordered Plaintiff to submit unredacted versions of the messages for *in camera* review and ordered both sides to submit short briefs on the issues.  (*Id.*).  The parties complied.  (*See* Def. Br.; Pl. Br.).

After reviewing the filings, and for the reasons explained below, the Court GRANTS Defendant's request.

## Governing Law

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice."  *In re Grand Jury*, 23 F.4th 1088, 1091 (9th Cir. 2021) (citation omitted).  Whether communications are covered by the privilege is determined by an eight-part test:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.   CV 24-3571 FLA (PVCx) | Date:  June 23, 2025 |
| Title   Asha Daniels v. Big Grrrl Big Touring, Inc., et al. | |

purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Greer v. Cnty. of San Diego*, 127 F.4th 1216, 1224 (9th Cir. 2025) (citation omitted).

"The privilege requires that 'legal advice' be sought 'from a professional legal adviser,' and so typically a lawyer's involvement in the communication is a necessary condition to the application of the privilege." *In re Novalpina Cap. Partners I GP S.a.r.l.*, No. 3:23-MC-00082-IM, 2025 WL 920667, at *4 (D. Or. Mar. 26, 2025) (citation omitted).

As a rule, the privilege and its corresponding confidentiality are destroyed when an otherwise privileged communication is shared with a third party. *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007). An exception to this rule exists, however, where individuals share a common legal interest. This concept is known as the common interest doctrine or joint defense.

"To successfully invoke the doctrine, the party asserting the privilege must show: (1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *Rodriguez v. Seabreeze Jetlev LLC*, 620 F. Supp. 3d 1009, 1019 (N.D. Cal. 2022) (internal quotation marks omitted). "Given that the common-interest doctrine 'is an anti-waiver exception,' the doctrine applies 'only if the communication at issue is privileged in the first instance.'" *Id.* (quoting *Callwave Commc'ns, LLC v. Wavemarket, Inc.*, No. C 14-80112 JSW, 2015 WL 831539, at *4 (N.D. Cal. Feb. 23, 2015).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. | CV 24-3571 FLA (PVCx) |   Date: June 23, 2025 |
| Title | Asha Daniels v. Big Grrrl Big Touring, Inc., et al. |

"The common interest doctrine is not limited to parties to litigation, but can extend to interested third parties who have a community of interests with respect to the subject matter of the communications, and is applicable whenever parties with common interests join[ ] forces for the purpose of obtaining more effective *legal assistance*." *In re California Bail Bond Antitrust Litig.*, No. 19-CV-00717-JST (DMR), 2025 WL 1101522, at *6 (N.D. Cal. Apr. 14, 2025) (emphasis added) (internal quotation marks omitted); *see also Nidec*, 249 F.R.D. at 579 (explaining that when the joint interest doctrine is used in the attorney-client privilege context, as opposed to the work product context, the parties must have "a common legal, as opposed to commercial, interest").

However, amorphous shared interests are not sufficient to invoke the agreement. Those seeking to use the shield must show some type of particular interest, whether formalized in writing or not. "[I]t is clear that no written agreement is required, and that a [joint defense agreement] may be implied from conduct and situation, such as attorneys exchanging confidential communications from clients who are or potentially may be codefendants or have common interests in litigation."[6] *United States v. Gonzalez*, 669 F.3d 974, 979 (9th Cir. 2012). Still, the case law requires some sort of definition to the relationship. "A shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties within this exception. Instead, the parties must make the communication in pursuit of a joint strategy in accordance with some form of agreement—whether written or unwritten." *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012) (citation omitted).

---

[6] Courts often refer to common interest doctrine as the joint defense privilege and use the terms interchangeably.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.    CV 24-3571 FLA (PVCx) | Date: June 23, 2025 |
| Title    Asha Daniels v. Big Grrrl Big Touring, Inc., et al. | |

**Discussion**

1. <u>Whether an Attorney's Presence is Required for the Common Interest Doctrine Apply is Unclear.  For the Purposes of this Order, the Court Assumes Without Deciding that an Attorney's Presence is Not Required.</u>

     As an initial matter, the parties disagree on whether a shared attorney must be present during any communications protected by the common interest doctrine.  (*See* Pl. Br. at 4–5; Def. Br. at 4).  This is no surprise.  "[T]he extent to which the common-interest doctrine may shield communications between non-attorneys is not clear under existing law."  *In re Novalpina*, 2025 WL 920667, at *5 (comparing authority requiring the presence of counsel with the holding in *Gonzalez* that "that the doctrine allows 'persons who share a common interest in litigation . . . to communicate with their respective attorneys *and with each other* to more effectively prosecute or defend their claims.'" (emphasis in original)).  In the face of this split, the *Novalpina* court adopted a compelling three-part test to determine whether communications of this type are protected from disclosure.  Under this test, "a communication between two parties sharing a common interest, even outside the presence of counsel, may be privileged 'if (1) one party is seeking confidential information from the other on behalf of an attorney; (2) one party is relaying confidential information to the other on behalf of an attorney; and (3) the parties are communicating work product that is related to the litigation.'"  *Id.* (quoting *IBJ Whitehall Bank & Tr. Co. v. Cory & Assocs., Inc.*, No. CIV. A. 97 C 5827, 1999 WL 617842, at *6 (N.D. Ill. Aug. 12, 1999)).

     This Court applies that test here, and, under the *Novalpina* test, the protection for Plaintiff breaks down at parts one and two.  None of the redacted messages at issue here involve requests for confidential information made on behalf of Mr. Zambrano nor do they involve information shared on the part of Mr. Zambrano.  Instead, the messages largely contain sentiments of emotional support, appreciation for Mr. Zambrano,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.    CV 24-3571 FLA (PVCx) | Date:   June 23, 2025 |
| Title     Asha Daniels v. Big Grrrl Big Touring, Inc., et al. | |

coordination of media strategy, and reactions to potential filing dates.  Assuming without deciding that an attorney need not be present for communications to be covered by the common interest strategies, the redacted messages here do not reveal enough coordination by or relation to Mr. Zambrano's representation to be covered by the exception to third-party disclosure rules Plaintiff raises.

2. <u>Setting Aside the Issue of Attorney Presence, the Common Interest Doctrine Does Not Apply to the Messages in Question Under the Traditional Three-Part Test.  Plaintiff Has Failed to Show That a "Common Interest" Exists Between Her and the Nonparties as Defined by the Law.</u>

To successfully invoke the common interest doctrine, a party must first show that "the communication [was] made by separate parties in the course of a matter of common interest." *Rodriguez*, 620 F. Supp. 3d at 1019.  Plaintiff characterizes the common interest she and the three nonparties share as "their similar employment claims against the same defendant." (Pl. Br. at 3).  This generalized interest, on its own, is too vague for the doctrine to apply.  Her cases inform this decision.

Plaintiff first cites *Diagnostics Systems Corp. v. Symantec Corp.*, No. SA CV 06-1211 DOC (ANx), 2008 WL 9396387 (C.D. Cal. Aug. 12, 2008) for the general proposition that parties who share the same attorney may discuss what that attorney tells them in confidence without waiving privilege. (Pl. Br. at 3–4).  *Diagnostic Systems* involved an inventor who had assigned his rights to two patents through an agreement that required him to "generally do everything possible . . . to obtain and enforce proper patent protection" for his inventions." *Diagnostic Sys.*, 2008 WL 9396387, at *1.  That language passed through a series of transactions—each of which required the original patent holder to do everything possible to enforce patent protection—until a subsequent holder filed a lawsuit to enforce patent protections for the two patents.  *Id.* at *1–2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   CV 24-3571 FLA (PVCx)                                    Date:  June 23, 2025

Title         Asha Daniels v. Big Grrrl Big Touring, Inc., et al.

During this litigation, the same law firm represented the inventor as well as the plaintiff patent holder. *Id.* at *9. Defendants sought disclosure of the inventor's communications with the firm. *Id.*

The court rejected disclosure under the common interest doctrine. *Id.* It noted that the inventor and the plaintiff patent holder had a shared, concrete interest in the outcome of the verdict in the same litigation. *Id.* The inventor was substantially involved in that litigation by appearing for multiple depositions and court appearances while represented by the plaintiff's firm. *Id.* Though not named as a party, the court there described the inventor, who was bound by his prior contractual obligation, as "nearly a Plaintiff in the instant action." *Id.*

The relationship between Plaintiff and the nonparties here is not the same. The nonparties share no financial or legal interest in the resolution of this specific lawsuit. They have no legal obligation like the *Diagnostic Systems* inventor to assist Plaintiff's suit. They are not "nearly . . . Plaintiff[s] in the instant action." *Id.* Instead, their common interest is the noble one of friendship; their messages reveal a strong level of emotional support. This, however, is insufficient to claim the common interest doctrine.

Next, Plaintiff cites *Amphastar Pharmaceuticals, Inc. v. Aventis Pharma SA*, EDCV 09-23-MJG (OPx), 2013 WL 12136380 (C.D. Cal. Aug. 9, 2013) for several propositions, but, as relevant here, for the rule that the common interest doctrine applies even where all communicants do not share completely aligned interests. (Pl. Br. at 4–5). *Amphastar* does recite that general rule. *See* 2013 WL 12136380, at *5. However, the facts of that case distinguish it from those before the court now.

*Amphastar* involved a relator who filed a *qui tam* False Claims Act, 31 U.S.C. § 3729 against several pharmaceutical companies. 2013 WL 12136380, at *2. As is the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   CV 24-3571 FLA (PVCx)                                      Date:  June 23, 2025

Title      Asha Daniels v. Big Grrrl Big Touring, Inc., et al.

case in a *qui tam* actions, the relator stood in the shoes of the United States government. *Id.*  And, as is required in these actions, the relator disclosed factual information about its lawsuit to the Government before prosecuting its case. *Id.* at *3.  Defendants sought disclosure of the information, two which the relator objected on privilege grounds. *Id.*  The court held for the relator.  Because "[f]or all practical purposes a relator and the Government are *essentially the same party*" and because "[a]ll of a relator's claims, litigation strategies, and ultimate goals, are all asserted on behalf of the Government, the Court found that the relator and the government had "sufficient commonality of interests such that they can successfully assert the joint prosecution privilege." *Id.* at *5.

The relationship Plaintiff enjoys with the nonparties bears no resemblance to the Government and the relator in *Amphastar*.  None of the parties stand in the shoes of each other.  For the purposes of this dispute, Plaintiff and the nonparties do not have formal legal relationships.  Their common interest is too amorphous to invoke the doctrine they seek to use. [7]

3. <u>Finally, Plaintiff's Last-Minute Relevance Argument Fails.</u>

Plaintiff objects that the redacted messages are not relevant and should not be disclosed on that independent basis. (Pl. Br. at 6).  Plaintiff did not raise this argument during the Court's informal discovery conference.  Moreover, the nonparties produced

---

[7] Plaintiff to attempts to invoke the "joint-client doctrine" as a separate defense to Defendant's argument that the text message chain includes third-party disclosures. (Pl. Br. at 5–6).  Though the joint-client doctrine appears to more specifically apply to instances where parties have the same lawyer (in contrast to the common interest doctrine's occasional application to instances where different lawyers represent different clients with common interests), the Court's decision does not hinge on whether different lawyers were involved.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.   CV 24-3571 FLA (PVCx) | Date:  June 23, 2025 |
| Title   Asha Daniels v. Big Grrrl Big Touring, Inc., et al. | |

the redacted text message chain already, apparently, without objection to relevance. Plaintiff has failed to differentiate the relevance of the redacted portions from the unredacted portions.  The Court DENIES this objection.

### Conclusion

Accordingly, the Court GRANTS in part and DENIES in part Defendant's request. Plaintiff is **ORDERED TO COMPLY** within **7 days** of the date of this Order.[8]  The documents shall be produced unredacted, subject to the Stipulated Protective Order in this case and to be **used in this litigation only**.  Additionally, Plaintiff is ordered to file an unredacted version of the messages in question pursuant to Local Rule 79-6.

IT IS SO ORDERED.

| | 00:00 |
|---|---|
| **Initials of Preparer** | mr |

---

[8] The Court recognizes that the discovery cut-off deadline passed on June 20, 2025, but nevertheless orders compliance with this Order past the deadline to allow Plaintiff time to comply with this Order.