**MARTIN D. SINGER (SBN 78166)**
mdsinger@lavelysinger.com
**MICHAEL E. WEINSTEN (SBN 155680)**
mweinsten@lavelysinger.com
**MELISSA Y. LERNER (SBN 285216)**
mlerner@lavelysinger.com
**LAVELY & SINGER**
**PROFESSIONAL CORPORATION**
2049 Century Park East, Suite 2400
Los Angeles, California 90067-2906
Telephone: (310) 556-3501

Attorneys for Defendant
BIG GRRRL BIG TOURING, INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHA DANIELS, an Individual,<br><br>    Plaintiff,<br><br>    vs.<br><br>BIG GRRRL BIG TOURING, INC., a Delaware Corporation; CAPS PAYROLL, an unknown California Business Organization; MELISSA JEFFERSON (aka "LIZZO"), as an Individual; CARLINA GUGLIOTTA, as an Individual; AMANDA NOMURA, as an Individual, and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No.  2:24-cv-03571 FLA (PVCx)<br>[Hon.  Fernando L. Aenlle-Rocha]<br><br>**DEFENDANT BIG GRRRL BIG TOURING, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Statement of Uncontroverted Facts; Declarations of Melissa Y. Lerner, Ashley Joshi and Amanda Nomura; Request for Judicial Notice and [Proposed] Order; and [Proposed] Judgment filed concurrently herewith]<br><br>Date:  August 22, 2025<br>Time: 1:30 p.m.<br>Hon. Fernando L. Aenlle-Rocha<br>Courtroom:  6B |

7488-4

**PLEASE TAKE NOTICE** that on August 22, 2025 at 1:30 p.m. in Courtroom 6B in the First Street Courthouse located at 350 W. 1st Street, Los Angeles, CA 90012, Defendant BIG GRRRL BIG TOURING, INC. ("BGBT" or "Defendant") will and hereby does move the Court, pursuant to Federal Rule of Civil Procedure 56, for an order granting summary judgment for Defendant on each of the remaining claims for relief against BGBT in Plaintiff ASHA DANIELS' ("Daniels" or "Plaintiff") Second Amended Complaint (ECF No. 3-1 at pp. 326-73) (hereinafter, the "SAC"): the first claim for relief for hostile work environment sexual harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); second claim for relief for hostile work environment racial harassment in violation of Title VII; third claim for relief for disability discrimination in violation of the Americans with Disabilities Act of 1990 ("ADA"); fourth claim for relief for failure to accommodate in violation of the ADA; fifth claim for relief for failure to engage in the interactive process in violation of the ADA; sixth claim for relief for retaliation in violation of the ADA; and seventh claim for relief for retaliation in violation of the Fair Labor Standards Act ("FLSA").[1] In the alternative, Defendant moves the Court for an order granting partial summary judgment as to the claims identified in the accompanying Statement of Uncontroverted Facts.

Defendant's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment ("Motion") is made following the conference of counsel pursuant to Local Rule 7-3, which took place on July 3, 2025. *See* Declaration of Melissa Y. Lerner,

---

[1] Plaintiff's operative SAC was originally filed in the California Superior Court for the County of Los Angeles prior to Defendant's removal of the action to this Court on May 1, 2024, refers to "causes of action." However, in accordance with the Federal Rules of Civil Procedure ("FRCP"), convention and best practices in federal litigation, Defendant refers to them as "claims for relief" in this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support and all other documents filed concurrently herewith.

¶2, Ex. 1. Counsel for the parties were unable to reach a resolution obviating the need for Defendant to file the instant Motion.

This Motion is made on the basis that summary judgment for Defendant is appropriate because the uncontroverted facts and controlling law do not establish the essential elements of Plaintiff's seven remaining claims for relief against Defendant and, with respect to Plaintiff's fifth claim for relief for failure to engage in the interactive process, no such stand-alone claim exists under the ADA as a matter of law.

This Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities in support thereof; the accompanying Statement of Uncontroverted Facts; the Declarations of Melissa Y. Lerner, Ashley Joshi and Amanda Nomura, and exhibits thereto; those matters of which the Court may properly take judicial notice pursuant to Rule 201 of the Federal Rules of Evidence, including those that are the subject of the accompanying Request for Judicial Notice; all pleadings and papers on file in this action; and such other or further material or oral argument as may be presented to the Court at or before the hearing of this Motion.

Dated:  July 18, 2025

LAVELY & SINGER
PROFESSIONAL CORPORATION
MARTIN D. SINGER
MICHAEL E. WEINSTEN
MELISSA Y. LERNER


By:  _Melissa Y. Lerner_____
MELISSA Y. LERNER
Attorneys for Defendants
MELISSA JEFFERSON aka LIZZO,
BIG GRRRL BIG TOURING, INC. and
CARLINA GUGLIOTTA

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

I.   **INTRODUCTION** .................................................................................... 11

II.  **STATEMENT OF FACTS** ..................................................................... 14

   A.   **Daniels Is Terminated After Only Two and a Half Weeks on Tour**. ... 14

     1.   Daniels' Relationship with Nomura Quickly Sours. ................................ 14

     2.   Nomura Documents Issues with Daniels' Job Performance. .................. 14

     3.   After Being Fired, Daniels Opts to Hang Out Backstage. ...................... 15

   B.   **Procedural History of the Case.** ............................................................ 16

   C.   **Allegations Specific to Plaintiff's Sexual Harassment Claim.** .............. 16

   D.   **Allegations Specific to Plaintiff's Racial Harassment Claim.** ............... 18

   E.   **Allegations Specific to Plaintiff's ADA Claims.** ................................... 19

   F.   **Allegations Specific to Plaintiff's ADA Retaliation Claim.** ................... 21

   G.   **Allegations Specific to Plaintiff's FLSA Retaliation Claim.** ................. 21

III. **BGBT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ALL
REMAINING CLAIMS** ........................................................................... 21

   A.   **Legal Standard** ...................................................................................... 21

   B.   **Plaintiff's First Claim for Sexual Harassment** ..................................... 22

     1.   Plaintiff Was Not Harrassed Because of Her Sex. ................................. 22

     2.   The Alleged Harassment Is Not Sufficiently Severe or Pervasive. ........ 24

   C.   **Plaintiff's Second Claim for Racial Harassment** ................................... 25

     1.   Plaintiff Was Not Harrassed Because of Her Race. ............................... 25

     2.   The Alleged Harassment Is Not Sufficiently Severe or Pervasive. ........ 26

   D.   **Plaintiff's Third through Fifth Claims for Disability Discrimination in
Violation of the ADA** ............................................................................ 27

     1.   Plaintiff Is Not Disabled. ....................................................................... 27

     2.   Daniels Cannot Establish ADA Discrimination. .................................... 29

     3.   BGBT Had No Duty to Accommodate. ................................................. 29

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

4.    Failure to Engage in the Interactive Process Is Not a Standalone Claim Under the ADA. .................................................................................... 31

E.    **Plaintiff's Sixth and Seventh Claims for Retaliation** ............................ 31

1.    Plaintiff Cannot Establish a *Prima Facie* Case of ADA Retaliation. ...... 31

2.    Plaintiff Cannot Establish a *Prima Facie* Case of FLSA Retaliation. ..... 32

3.    BGBT Terminated Plaintiff for Legitimate, Non-Retaliatory Reasons. . 32

IV.    **CONCLUSION** ................................................................................................ 33

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adeyemi v. Garland,*
  No. EDCV 21-2107 JGB (DTBx), 2024 WL 4467998 (C.D. Cal. July 18, 2024) ........................................................................................................ 26

*Alphonsis v. Century Reg'l Det. Facility,*
  No. CV 17-03650-ODW (DFM), 2017 WL 11505981 (C.D. Cal. Sept. 11, 2017) ........................................................................................................ 28

*Alvarado v. Colvin,*
  No. CV12-10010 AJW, 2016 WL 370681 (C.D. Cal. Jan. 28, 2016)....................... 26

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986)............................................................................................ 22

*Aviles v. Alutiiq Sec. & Tech.,*
  No. 10-CV-2589-H (NLS), 2012 WL 12905874 (S.D. Cal. June 15, 2012), *aff'd,* 537 F. App'x 753 (9th Cir. 2013) ........................................... 29

*Bradford v. Precision Dynamic Corp.,*
  No. CV 06-08204 DDP (CTx), 2008 WL 11336611 (C.D. Cal. July 22, 2008) ................................................................................................................. 25

*Brooks v. City of San Mateo,*
  229 F.3d 917 (9th Cir. 2000) ............................................................................ 22

*Brown v. City of Tucson,*
  336 F.3d 1181 (9th Cir. 2003) .......................................................................... 31

*Curley v. City of N. Las Vegas,*
  772 F.3d 629 (9th Cir. 2014) ............................................................................ 29

*Ellis v. City of Reedley,*
  No. CV F 05-1474 AWI SMS, 2007 WL 1098571 (E.D. Cal. Apr. 12, 2007)................................................................................................................ 27

*Ellison v. Brady,*
  924 F.2d 872 (9th Cir. 1991) ...................................................................... 22, 24

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

*Faragher v. City of Boca Raton*,
    524 U.S. 775 (1998)..................................................................................22, 24

*Foster v. City of Oakland*,
    No. C-08-01944 EDL, 2008 WL 3286968 (N.D. Cal. Aug. 5, 2008).......................30

*Gasaway v. Nw. Mut. Life Ins. Co.*,
    26 F.3d 957 (9th Cir. 1994) .......................................................................22

*Harris v. Forklift Sys.*,
    510 U.S. 17 (1993).....................................................................................22, 24

*Kasten v. Saint-Gobain Performance Plastics Corp.*,
    563 U.S. 1 (2011).......................................................................................32

*Kennedy v. UMC Univ. Med. Ctr.*,
    203 F. Supp. 3d 1100 (D. Nev. 2016).......................................................27

*Kortan v. Cal. Youth Auth.*,
    217 F.3d 1104 (9th Cir. 2000) ..................................................................24

*Lambert v. Ackerley*,
    180 F.3d 997 (9th Cir. 1999) ....................................................................32

*Lewis v. CoreCivic of Tenn., LLC*,
    No. 21-cv-01385-JAH-BGS, 2023 WL 2534619 (S.D. Cal. Mar. 15,
    2023) ..........................................................................................................30

*Manatt v. Bank of America, NA*,
    339 F.3d 792 (9th Cir. 2003) ....................................................................27

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)..................................................................................22

*McAlindin v. Cnty. of San Diego*,
    192 F.3d 1226 (9th Cir. 1999) ..................................................................31

*McCray v. WestRock Servs., LLC*,
    No. CV 21-9853-DMG (RAOx), 2023 WL 4291844 (C.D. Cal. June 5,
    2023) ..........................................................................................................25

*McDonnell Douglas Corp. v. Green*,
    417 U.S. 792 (1973)..................................................................................29, 31

*Medina v. Donahoe*,
    854 F. Supp. 2d 733 (N.D. Cal. 2012) ........................................................................ 26

*Meritor Sav. Bank, FSB v. Vinson*,
    477 U.S. 57 (1986) ........................................................................................................ 24

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
    210 F.3d 1099 (9th Cir. 2000) ..................................................................................... 21

*Oncale v. Sundowner Offshore Servs.*,
    523 U.S. 75 (1998) ............................................................................................ 22, 23, 24

*Parks v. Port of Oakland*,
    No. 16-cv-04061-HSG, 2017 WL 2840704 (N.D. Cal. July 3, 2017) ...................... 28

*Peck v. City of Tucson*,
    No. 21-15198, 2021 WL 5984971 (9th Cir. Dec. 16, 2021) ..................................... 23

*Pieszak v. Glendale Adventist Med. Ctr.*,
    112 F. Supp. 2d 970 (C.D. Cal. 2000) ................................................................ 22, 24

*Pinder v. Emp. Dev. Dep't*,
    227 F. Supp. 1123 (E.D. Cal. 2017) ........................................................................... 25

*Rohr v. Salt River Project Agric. Imp. & Power Dist.*,
    555 F.3d 850 (9th Cir. 2009) ...................................................................................... 27

*Roloff v. SAP Am., Inc.*,
    432 F. Supp. 2d 1111 (D. Or. 2006) ........................................................................... 30

*Rue v. Hickman's Egg Ranch Inc.*,
    No. CV-14-00867-PHX-GMS, 2016 WL 558412 (D. Ariz. Feb. 12,
    2016) ............................................................................................................................. 28

*Samper v. Providence St. Vincent Med. Ctr.*,
    675 F.3d 1233 (9th Cir. 2012) .................................................................................... 27

*Sandvik v. Sec'y of Health & Hum. Servs.*,
    No. 00-35824, 246 F.3d 676 (Table), 2000 WL 1881470 (9th Cir. Dec.
    15, 2022) ...................................................................................................................... 23

*Smith v. Cnty. of Humboldt*,
    240 F. Supp. 2d 1109 (N.D. Cal. 2003) ............................................................. 22, 23

8

*Snapp v. United Transp. Union*,
  889 F.3d 1088 (9th Cir. 2018) ................................................................... 31

*Square v. Potter*,
  No. CV 07-7052 PA (JTLx), 2009 WL 10671413 (C.D. Cal. June 22,
  2009), *aff'd sub nom. Square v. Donahoe*, 430 F. App'x 633 (9th Cir.
  2011) ......................................................................................................... 28

*Standard v. A.B.E.L. Servs., Inc.*,
  161 F.3d 1318 (11th Cir. 1998) ................................................................. 31

*Stanley-Bey v. San Quentin State Prison*,
  No. 17-04511 BLF (PR), 2018 WL 6334984 (N.D. Cal. Dec. 3, 2018) ................... 28

*Steinmetz v. Golden State Supply, Inc.*,
  No. CV 07-6155-JFW (Ex), 2008 WL 11336824 (C.D. Cal. Apr. 15,
  2008) ......................................................................................................... 24

*Thomas v. Atlanta Pub. Schs.*,
  No. 23-11101, 2024 WL 2992938 (11th Cir. 2024)  ................................... 31

*Thornton v. City of St. Helens*,
  425 F.3d 1158 (9th Cir. 2005) ................................................................... 26

*Vanhorn v. Hana Grp., Inc.*,
  979 F. Supp. 2d 1083 (D. Haw. 2013) ....................................................... 26

*Vasquez v. City of Los Angeles*,
  349 F.3d 634 (9th Cir. 2003), *as amended* (Jan. 2, 2004) ................... 25, 27

*Volis v. Housing Auth. of City of Los Angeles Emps.*,
  No. CV 13–01397 MMM (SPx), 2014 WL 12675082 (Jan. 16, 2014),
  *aff'd*, 670 F. App'x 543 (9th Cir. 2016) ................................................... 31

*Weeks v. Union Pac. R.R. Co.*,
  137 F. Supp. 3d 1204 (E.D. Cal. 2015) ..................................................... 31

**Statutes**

42 U.S.C. §12102 ............................................................................................ 27

9

**Other Authorities**

EEOC Regulations to Implement the Equal Employment Provisions of the
   ADA, 29 C.F.R. §1630.2 (2024) ...................................................................... 29

EEOC Regulations to Implement the Equal Employment Provisions of the
   ADA, 29 C.F.R. §1630.9 (2024) ...................................................................... 30

Fed R. Civ. P. 56 ............................................................................................. 2, 21

Fed. R. Evid. 201 ................................................................................................. 3

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiff Asha Daniels filed this lawsuit because she did not enjoy working as the Wardrobe Assistant on the European leg of Lizzo's The Special Tour (the "Tour") for two and a half weeks. This was Daniels' first time in an arena tour environment. She believed the Wardrobe Assistant role would grant her direct access to Lizzo, the opportunity to pitch costume ideas to the celebrity and her team, play with new designs for Lizzo's backup dancers ("Big Grrrls") and the discretion to do as she pleased. Once she joined the Tour, it was immediately evident that she felt the role was beneath her. Daniels' failure to follow instructions from Wardrobe Manager Amanda Nomura ("Nomura") and safety protocol led to strife between them. To add insult to injury, Daniels got no closer to Lizzo than occasionally smiling at her in passing.

Daniels blamed Nomura for misrepresenting her job duties before Daniels accepted the position. Only days into her employment with Defendant Big Grrrl Big Touring, Inc., Daniels started texting Tour Manager Carlina Gugliotta ("Gugliotta") to complain that Nomura was "bullying" her. She said nothing about a hostile work environment based on sex or race, the claims at issue here. None of the complained-of conduct that allegedly offended Daniels is actionable discrimination or retaliation under federal law. Gugliotta investigated Daniels' claims, confirmed no one could corroborate Daniels' version of events and instructed the two to get along. But Daniels could and would not do so.

BGBT terminated Daniels because she could not work productively with Nomura, was inexperienced, did not want to continue with the Tour, and failed to comply with safety regulations, Tour protocol and Nomura's instructions. Tellingly, rather than flee from a purportedly PTSD-inducing hostile work environment, Daniels asked to stay for Lizzo's Paris concert, drinking and posing for photos with opening act Bree Runway ("Runway") and her entourage and visiting Lizzo's dancers backstage. After her

termination, Daniels continued pitching costume designs to Lizzo's team, without success.

Daniels spent months convincing herself that Nomura, Gugliotta and Lizzo had wronged her and plotting how to get even. After three former Big Grrrls sued Lizzo and BGBT, Daniels retained the same attorney to bring her own claims. A former reality TV competition runner-up, Daniels exploited public interest in allegations concerning superstar Lizzo to promote herself online. Social media posts like the one below and a press tour with her attorney drummed up more publicity, with Daniels smiling and laughing the entire time.



Daniels lacks credibility and her self-serving, vague and contradictory allegations are insufficient to support what is left of her significantly slimmed-down lawsuit. ***Despite purportedly being traumatized by alleged harassment and discrimination, she offers no specific information to support her claims or a single witness or document to***

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

*corroborate her absurd allegations.* She is also a brazen liar. For example, in her operative Second Amended Complaint– as well as its first two iterations and her declaration under penalty of perjury submitted to the EEOC – Daniels alleges sexual harassment based in part on receiving a photo in a group chat depicting a crewmember posing by an equipment case decorated with photos of nude men ("Case Photo") while working on Tour. Statement of Uncontroverted Facts ("SUF") 33-36. Not so. Faced with documents *she* produced, Daniels had to concede at her deposition that *the photo was sent almost one week after she was fired*. *Ibid.* Caught in this lie, Daniels claimed for the first time that she saw the decorated case in-person while on Tour. SUF 37-38,41. Another tall tale. Multiple witnesses confirmed that the case (which was Gugliotta's) was decorated for a crewmember's birthday on March 11, 2023 and kept in her office all day. SUF 39-41.

After multiple successful challenges to the pleadings, the only claims still at issue against BGBT are for sexual harassment, racial harassment, disability discrimination and retaliation. BGBT is entitled to judgment as a matter of law on every one of them. Daniels has not identified *any* actionable harassment or discrimination because of sex or race, let alone anything pervasive or severe enough to give rise to an objectively hostile and abusive work environment. She does not have any disability protected by the ADA and, in any event, did not request accommodations from BGBT. Daniels was able to perform her job despite her purported disabilities, confirming BGBT had no obligation to provide accommodations. Daniels' stand-alone claim for failure to engage in the interactive process does not exist under the ADA and settled federal law. Finally, Daniels did not engage in any protected activity and her termination was based on valid, non-retaliatory reasons, and both are fatal to her ADA and FLSA retaliation claims.

Daniels is not a victim of discrimination or harassment, but a disgruntled former employee with an inflated ego, personal vendettas against Nomura, Gugliotta and Lizzo and an unquenchable thirst for free publicity. Her frivolous lawsuit makes a mockery of

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

true victims and the laws designed to protect them. Because Daniels' claims fail as a matter of law, BGBT respectfully requests that the Court grant its Motion and bring this meritless case to an end.

## II.    STATEMENT OF FACTS

### A.    *Daniels Is Terminated After Only Two and a Half Weeks on Tour.*

#### 1.    Daniels' Relationship with Nomura Quickly Sours.

At Nomura's recommendation, BGBT hired Daniels as the Wardrobe Assistant for the European leg of Lizzo's Tour from February 14 to March 17, 2023. SUF 2-3,7,12,17. Almost immediately after arriving in Europe, Daniels clashed with Nomura. SUF 4,6,8,14-15. Tensions arose because Daniels felt she was too good to do the work assigned to her. She blamed Nomura for misrepresenting the job in "a total bait and switch." SUF 9,16. Daniels complained about working long hours, getting little sleep and not having enough time for herself. SUF 19,30.

Sometime during her first few days on Tour, Daniels alleges she helped Nomura move a clothing rack, which ran over Daniels' foot. SUF 92. Daniels claims that when she told Nomura her foot hurt, Nomura allegedly said "don't make excuses" and pushed her, causing her to lose her balance and roll her right ankle. *Ibid.* Daniels accused Nomura of lying about this purported incident and complained about other purported "bullying" in texts to Tour Manager Gugliotta. SUF 8,130.

#### 2.    Nomura Documents Issues with Daniels' Job Performance.

While Daniels accused Nomura of bullying, Nomura kept careful notes about Daniels' poor job performance, flagrant disregard for the rules and intentional efforts to undermine Nomura in front of others. SUF 23,100,127,137,141. For example, Nomura repeatedly told Daniels she could not work in Crocs, per local regulations and safety protocols, and her failure to comply could result in fines for BGBT. SUF 23. When Nomura reminded her again on February 24, Daniels removed her Crocs and walked around in socks. *Ibid.* Daniels violated Tour protocol by providing BGBT resources to

1    the opening act and local workers, and became hostile when Nomura instructed her

2    otherwise. SUF 66,81,127,137,141.

3    ###    3.    After Being Fired, Daniels Opts to Hang Out Backstage.

4    On or about March 4, 2023, BGBT management decided to terminate Daniels'

5    employment for various reasons, including the ongoing personal conflict between her

6    and Nomura, her non-compliance with safety regulations and Tour protocols and her

7    inexperience. SUF 1,127-128,134,136-138,140-142. On March 5, the day of Lizzo's

8    Paris concert, Daniels claimed to be experiencing an allergic reaction. SUF 91,117-

9    120,123. Daniels left to take a nap and took a pill offered by a friend, which alleviated

10    her symptoms within an hour. SUF 121-122. After speaking with Gugliotta, Daniels

11    drank and posed for photos with Runway (below) and visited with the Big Grrrls

12    backstage, watched Lizzo's show with her friends and flew home the next day. SUF 10-

13    11.

14



15    18    19    20    21    22    23    24    25    26    27    28

15

**B.**    *Procedural History of the Case.*

On September 21, 2023, Plaintiff sued BGBT, Lizzo, Gugliotta and Nomura in California Superior Court, which she later amended to add additional California FEHA and Labor Code claims. (ECF No. 3-1, pp. 2-50, 128-84.) On February 14, 2024, BGBT, Lizzo and Gugliotta filed a demurrer to the FAC because California's FEHA and Labor Code do not apply extraterritorially; the Superior Court sustained it with leave to amend. (*Id.*, pp. 248-79, 321-24.) On April 2, 2024, Plaintiff filed the operative SAC, essentially asserting the same substantive claims under federal law (Title VII, the ADA and the FLSA). (*See* SAC.) Before BGBT, Lizzo and Gugliotta removed the case to federal court, Plaintiff voluntarily dismissed Nomura from the case. (ECF Nos. 3 & 3-1, pp. 371-73; Lerner Decl. ¶3, Ex. 2.) On December 2, 2024, the Court granted the motion to dismiss filed by BGBT, Lizzo and Gugliotta, dismissing all claims against Lizzo and Gugliotta and the FLSA unpaid overtime claim against all defendants. (ECF Nos. 12, 28.)

Based on the SAC, Plaintiff's EEOC Charge against BGBT and her deposition testimony, it is unclear what conduct she has alleged supports her seven remaining claims. A significant portion of what Plaintiff characterizes as evidence of alleged harassment, discrimination or retaliation is not actionable under Title VII, the ADA or FLSA. This includes, for example, allegations that Nomura called the dancers and Lizzo "fat," threatened to "kill a bitch" if her job was threatened, drank alcohol at work and talked about doing "hard drugs," all of which are ludicrous and unsupported by any witness or document. SUF 18-32.

**C.**    *Allegations Specific to Plaintiff's Sexual Harassment Claim.*

As discussed above, one of Daniels' key sexual harassment allegations – based on receiving the Case Photo in a crewmember group chat – is not actionable because it post-dates her termination. SUF 33-36. Similarly, Daniels' claim that she observed the decorated case in-person backstage is verifiably false. SUF 37-41.

Plaintiff testified for the first time at her deposition that she felt unsafe because the crewmember in the Case Photo, a homosexual man, allegedly carried around a bag of small penis-shaped candies or figurines (she could not be sure which) while making sexually suggestive remarks and gestures, such as sticking out his tongue. SUF 52. Plaintiff could not recall any details about this alleged conduct (*e.g.*, when or where this happened), but confirmed the comments and gestures were not directed toward her. SUF 53. She did not ask the crewmember to stop this alleged conduct. SUF 54. While she claims to have complained to Gugliotta about it, Daniels could not provide any details about their purported in-person conversation. SUF 55.

Daniels alleges she was exposed to a conversation about hiring sex workers and going to sex clubs while on the tour bus to Amsterdam. SUF 42-45. Daniels claims Nomura "participated" by laughing, but does not know what she laughed at. SUF 44. She could not recall how many people participated or their names, sex or appearance, or identify a single statement made during the alleged conversation. SUF 45-46. Daniels also claims she was invited by a group of people to go somewhere in Amsterdam's Red Light District. SUF 48. Despite alleging she felt pressured to join, **she did not go**. SUF 50. Daniels could not remember any details of this alleged incident, including who invited her, the name of the place or what type of establishment it was. SUF 49.

Daniels testified Nomura allegedly objectified her by instructing Daniels not to interact with Lizzo or her boyfriend and to "tone it down" and not to dress attractively or wear makeup in front of them because this would make Lizzo jealous. SUF 56. Nomura also allegedly told Daniels that Lizzo's boyfriend was attracted to Nomura. SUF 57. Daniels alleges the Big Grrrls were forced to change in tents backstage during shows without sufficient privacy, and white male crewmembers "would lewdly gawk, sneer, and giggle" at the dancers while they changed, but could not provide any specifics about time, place or who was involved. SUF 58. No witnesses corroborated this claim. SUF 59.

17

There is no evidence (besides Daniels' own non-specific testimony) she reported any alleged sexual harassment to Gugliotta, Production Manager Chris Coffie ("Coffie") or Production Coordinator Dulce Martin ("Martin") (collectively, "Tour Management"). SUF 38,47,51,60. Daniels testified at her deposition that, despite the alleged sexual harassment, she not only performed her job duties, but went above and beyond to do an excellent job. SUF 61-62,64.

### D.    *Allegations Specific to Plaintiff's Racial Harassment Claim.*

Daniels's racial harassment is primarily based on what Daniels characterized as Nomura's alleged racist "microaggressions." SUF 65-68,70-71,74-77. Daniels identified the following alleged microaggressions: (1) Nomura told Daniels not to fix the dancers' dressing room, even though they were likely to complain about not having enough space or tools; (2) Nomura told Daniels she could not give BGBT's supplies to the opening act and conveyed this to Runway's manager with Daniels present, allegedly in a "nasty tone"; (3) Nomura told Runway's manager that her back-up dancers were not to interact with Lizzo and her dancers, and instructed Daniels not to talk to Runway or her team; (4) Nomura asked security to follow Runway, her dancers and tour manager on social media to see if they were complying with security protocols because she wanted to get them kicked off the Tour (although Nomura had no authority to do so); (5) Nomura allegedly called Runway (a Black woman) and Dulce Martin (who is not Black) "bitch"; and (6) Nomura yelled at Daniels for losing her walkie talkie, breaking her phone, complaining about her to Gugliotta and not following Tour protocol. SUF 21-22,24-25,65-67,69-71.

Daniels alleges Nomura purportedly made fun of one of the Big Grrrls by mimicking her and using a snapping gesture in a conversation with another employee. SUF 72. Daniels conceded she did not know the context or the dancer allegedly being mocked, did not recall anything Nomura said and could not know if Nomura was, in fact, mimicking a dancer at all. SUF 73. Daniels also alleges Nomura made fun of the

Big Grrrls by complaining about the smell of their costumes and laughing at some of the dancers who soiled their costumes. SUF 75-77. Daniels alleges Nomura said Lizzo could not dance or sing, was fake and was hard to work with or please. SUF 82. Daniels also alleges Nomura told her that Lizzo purportedly used racial slurs to talk about famous Black women in a derogatory way. SUF 83-84.

Daniels testified that Nomura's interactions with local crew members from the European cities they visited also constituted racial harassment. She alleged that out of the approximately thirty locals who worked in wardrobe during her time on Tour, Nomura sent home three women early (only one of whom was Black) and purportedly called them "dumb" and "lazy." SUF 13,78. Daniels conceded there were Black local workers whom Nomura did *not* send home early. SUF 79. In addition, Daniels alleged Nomura was rude to white local workers and BGBT employees. SUF 81.

Daniels' only verifiable complaint to BGBT Management concerning alleged racism was a text message to Gugliotta in which Daniels (falsely) stated she was the only Black woman working backstage and claimed Nomura was "treating [her] like a slave." SUF 17,85-89. Nevertheless, Daniels confirmed this alleged racial harassment did not interfere with her ability to do her job. SUF 90.

## E.    *Allegations Specific to Plaintiff's ADA Claims.*

Daniels' ADA claims are based on three purported disabilities: (1) alleged injuries to her right foot and ankle that she claims was caused by Nomura; (2) two broken acrylic nails that allegedly caused her nailbeds to bleed; and (3) an alleged allergic reaction. SUF 91.

Daniels alleges that she was not allowed to sit down after she purportedly injured her foot/ankle. SUF 108. Daniels alleges Nomura instructed her not to wear Crocs despite her purported injury. SUF 100. However, Daniels confirmed she nevertheless wore Crocs on days when her ankle was particularly swollen. *Ibid*. She also testified she wore combat boots and slide-on gym shoes, and did not request crutches. SUF 101-102.

She alleges she asked Nomura if there was someone on Tour she could see for her right foot/ankle injury, and that Nomura said "no." SUF 105. While she confirmed Nomura never explicitly said she was prohibited from seeing a medical professional in the cities they visited, Daniels claims she felt it was implied. SUF 106. Daniels did not request medical care for her foot/ankle from Tour Management. SUF 5,103,125.

Daniels alleges she had trouble getting into her tour bus bunk and asked Nomura once to change bunks, but Nomura refused. SUF 109. Daniels did not ask anyone else on her bus to switch bunks or request a ladder from Tour Management. SUF 111. Gugliotta and Coffie testified Daniels never requested accommodations from them. SUF 110,129.

Daniels testified she allegedly asked for over-the-counter pain medication for her foot/ankle injury but was not given any. SUF 5,105. She confirmed she did not ask for such medication at any of the hotels they stayed at, purportedly because she "had become so used to not medicating it," but did ice her foot at one of the hotels. SUF 97,99. The pain subsided during the Tour and Daniels did not feel the need to see a doctor when she returned home. SUF 96.

Daniels testified that she broke two fake nails (acrylics) but could not recall when or where this happened. SUF 91. Daniels alleges they broke down to the nailbed, causing her to bleed, and she was provided with Band-Aids. SUF 113-116. She continued to perform her work. SUF 116.

Daniels testified that, on March 5, 2023, she began feeling "a little dizzy, a little woozy" and itchy, and her stomach was "unsettled." SUF 91,120. Daniels believes this was an allergic reaction to something she ate, but could not be sure. SUF 119. While Daniels alleges she asked Nomura to see a medical professional and was denied, she did not make this request of BGBT Management. SUF 5,117-118,124. Daniels texted Gugliotta that she was experiencing an allergic reaction but did not request medical attention. SUF 117,123. Daniels went to the tour bus to take a nap, then took an unfamiliar pill from a friend in catering that relieved her symptoms within an hour. SUF

121-122,126. Daniels claims she completed all her work responsibilities despite her purported condition. SUF 126.

**F.**    *Allegations Specific to Plaintiff's ADA Retaliation Claim.*

The SAC is hopelessly vague regarding the basis of Plaintiff's ADA retaliation claim.[2] Based on the SAC and Daniels' deposition testimony, BGBT understands the claim to be that Plaintiff was allegedly terminated because of her purported disabilities and requests for accommodations, specifically her alleged request for medical care for her allergic reaction. SUF 129-135. However, Plaintiff testified that prior to texting Gugliotta about her alleged allergic reaction, she had already received an email confirmation that her flight home was rebooked from March 19 to March 6, leading her to suspect she was being fired. SUF 136. This is consistent with testimony that Tour Management reached the decision to terminate Daniels prior to her alleged allergic episode. SUF 134.

**G.**    *Allegations Specific to Plaintiff's FLSA Retaliation Claim.*

Plaintiff alleges she "was discharged in retaliation for raising complaints about wage and hour violations." SAC ¶139.  There is no evidence she complained to Tour Management about FLSA wage and hour violations. SUF 139.

## III.    BGBT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON ALL REMAINING CLAIMS

**A.**    *Legal Standard*

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c). A moving defendant "may produce evidence negating an essential element" as to which the plaintiff bears the burden of proof at trial. *Nissan Fire & Marine Ins. Co. v.*

---

[2] Most of the allegations in Plaintiff's retaliation claims concern purported racial and sexual harassment or other non-actionable conduct. *See* SAC ¶¶112, 114-20, 124-28, 142-53, 155, 157-58.

1  *Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). The burden then shifts to the plaintiff "to

2  produce evidence sufficient to support a jury verdict in her favor." *Gasaway v. Nw. Mut.*

3  *Life Ins. Co.*, 26 F.3d 957, 959 (9th Cir. 1994) (citation omitted). A plaintiff cannot rely

4  on the pleadings, self-serving declarations or any disagreement or "metaphysical doubt"

5  about a material issue of fact to avoid summary judgment. *Matsushita Elec. Indus. Co.,*

6  *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The motion will be granted unless

7  "reasonable jurors could find by a preponderance of the evidence that the plaintiff is

8  entitled to a verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

9  **B.    *Plaintiff's First Claim for Sexual Harassment***

10  To state a prima facie case of hostile work environment sexual harassment, Daniels

11  must show she experienced unwelcome conduct of a sexual nature so severe or pervasive

12  as to alter the conditions of employment and create an abusive working environment.

13  *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993); *Brooks v. City of San Mateo*, 229 F.3d

14  917, 923 (9th Cir. 2000); *Ellison v. Brady*, 924 F.2d 872, 879 (9th Cir. 1991). "The

15  plaintiff's belief that she has been subjected to a hostile and abusive work environment

16  must be both subjectively held and objectively reasonable." *Smith v. Cnty. of Humboldt,*

17  240 F. Supp. 2d 1109, 1115 (N.D. Cal. 2003) (citing *Ellison*, 924 F.2d at 879); *Faragher*

18  *v. City of Boca Raton*, 524 U.S. 775, 786 (1998); *Harris*, 510 U.S. at 21. Here, the

19  objective analysis considers the perspective of "a reasonable woman." *Ellison*, 924 F.2d

20  at 879; *Brooks*, 229 F.3d at 924. Plaintiff has no evidence to establish the elements of her

21  sexual harassment claim.

22  **1.    Plaintiff Was Not Harassed Because of Her Sex.**

23  "Title VII does not prohibit all verbal or physical harassment in the workplace"

24  and conduct "merely tinged with offensive sexual connotations" is not actionable. *Oncale*

25  *v. Sundowner Offshore Servs.*, 523 U.S. 75, 80-81 (1998) (internal citation omitted);

26  *Pieszak v. Glendale Adventist Med. Ctr.*, 112 F. Supp. 2d 970, 992-93 (C.D. Cal. 2000)

27  (generally abusive environment or harassing conduct unconnected to sex or gender not

28

actionable under Title VII). "To survive a defendant's motion for summary judgment, as a threshold matter, a plaintiff must show the harassment occurred *because of sex*." *Smith*, 240 F. Supp. 2d at 1115 (emphasis added); *Oncale*, 523 U.S. at 80; *see also Peck v. City of Tucson*, 2021 WL 5984971, at *1 (9th Cir. Dec. 16, 2021); *Sandvik v. Sec'y of Health & Hum. Servs.*, 246 F.3d 676 (Table), 2000 WL 1881470, at *2 (9th Cir. Dec. 15, 2022). Daniels does not allege she was propositioned for sexual activity. SUF 63. Accordingly, the Court can infer the conduct at issue constitutes discrimination because of sex only if Daniels can (1) prove the harasser used "such sex-specific and derogatory terms" that he/she was clearly "motivated by general hostility to the presence of women in the workplace"; *or* (2) present "direct comparative evidence" the harasser treated men and women differently. *Oncale*, 523 U.S. at 80-82. Daniels can do neither.

Daniels has not identified any conduct by Nomura to demonstrate general hostility to women in the workplace or disparate treatment of men and women. The isolated instance of Nomura directing alleged harassment to Daniels (purportedly telling Daniels to tone down her appearance and avoid interacting with Lizzo and her boyfriend) is devoid of any sex-specific, derogatory terms. SUF 62. The same is true of the vague allegation that Nomura laughed at unidentified comments made by others on the tour bus. SUF 42-45. Daniels has presented no evidence Nomura treated men and women differently.

Similarly, a homosexual crewmember's alleged display of penis-shaped items and unspecified sexual comments is not sex-specific or derogatory towards women. SUF 52. Daniels testified his alleged actions were not directed towards her or any other woman. *Ibid.* In fact, there is every reason to believe a homosexual male *would* direct sexually suggestive conduct to men.

It is telling that Daniels did not report to BGBT Management any alleged sexual harassment by Nomura (or anyone else). SUF 38,47,51,55,60-61. Rather, Daniels

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1 repeatedly accused Nomura of bullying her and virtually everyone on Tour, further proof

2 their conflict arose from personal dislike instead of actionable sexual harassment.

### 2.    The Alleged Harassment Is Not Sufficiently Severe or Pervasive.

4 Title VII is not "a general civility code." *Oncale*, 523 U.S. at 81; *see also, e.g.*,

5 *Faragher*, 524 U.S. at 788 ("ordinary tribulations of the workplace, such as the sporadic

6 use of abusive language, gender-related jokes, and occasional teasing" do not violate

7 Title VII). Rather, a sexually objectionable environment must be sufficiently extreme to

8 constitute a change in the terms and conditions of employment. *Faragher*, 524 U.S. at

9 787. "[N]ot all workplace conduct that may be described as 'harassment' affects a 'term,

10 condition, or privilege' of employment within the meaning of Title VII." *Meritor Sav.*

11 *Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). To determine whether a hostile

12 environment exists, courts consider "the frequency of the discriminatory conduct; its

13 severity; whether it is physically threatening or humiliating, or a mere offensive

14 utterance; and whether it unreasonably interferes with an employee's work performance."

15 *Harris*, 510 U.S. at 23. "[T]he required showing of severity or seriousness of the

16 harassing conduct varies inversely with the pervasiveness or frequency of the conduct."

17 *Ellison*, 924 F.2d at 878.

18 What Plaintiff alleges is sexual harassment are the very kinds of sporadic jokes and

19 teasing that do not violate Title VII. Courts have found "[o]ffensive behavior far more

20 severe and frequent than the behavior identified by Plaintiff" to "fall short of establishing

21 a claim for hostile work environment" as a matter of law. *Steinmetz v. Golden State*

22 *Supply, Inc.*, 2008 WL 11336824, at *5-6 (C.D. Cal. Apr. 15, 2008) (MSJ granted where

23 male co-worker called female plaintiff "little hottie," told her to "get laid more," and

24 blocked her path and reprimanded her after she reported him); *Kortan v. Cal. Youth*

25 *Auth.*, 217 F.3d 1104, 1107 (9th Cir. 2000) (affirming summary judgment where

26 plaintiff's male supervisor forced her to listen to a tape with offensive language, read her

27 a letter containing the phrase "masturbate yourself" and called other women "castrating

28 bitch" and "regina"); *Pieszak*, 112 F. Supp. 2d at 992-93 (male coworker known for

harassing women publicly "belittle[d], demean[ed] and abuse[d]" female plaintiff; plaintiff identified 15-20 different incidents referring to sex/gender). Plaintiff's generalized allegations and failure to identify basic details about her alleged harassment are insufficient to defeat summary judgment. *See, e.g.*, *Bradford v. Precision Dynamic Corp.*, 2008 WL 11336611, at *5 (C.D. Cal. July 22, 2008) (MSJ granted where record consisted of "general assertions" and was "almost entirely devoid of specific facts addressing what was said or done, when it was said or done, and how it was said or done"). No reasonable woman would find the sporadic and relatively minor incidents alleged by Plaintiff created an abusive working environment.

### C.    *Plaintiff's Second Claim for Racial Harassment*

Apart from the basis of the discrimination, the elements of hostile work environment claims for racial and sexual harassment are the same. *See Vasquez v. City of Los Angeles*, 349 F.3d 634, 642-44 (9th Cir. 2003), *as amended* (Jan. 2, 2004) (applying same analysis to racial and sexual harassment claims). Plaintiff has no evidence to satisfy the elements of her racial harassment claim.

### 1.    Plaintiff Was Not Harassed Because of Her Race.

Daniels presents no direct evidence Nomura was motivated by discriminatory intent (*e.g.*, the use of racial slurs or overt references to race). Indeed, Nomura recommended Daniels be hired with full knowledge of her race. Instead, the basis of her claim is that Nomura is not Black, coupled with Daniels' subjective conclusion that every unpleasant interaction with her was a racist "microaggression." SUF 65-71,75-79,82-83. But "race-neutral criticism by a supervisor" is ***not*** "transformed into racial harassment simply because [she] . . . is not of Plaintiff's race." *Pinder v. Emp. Dev. Dep't*, 227 F. Supp. 1123, 1145 (E.D. Cal. 2017). There is no dispute that Nomura and Daniels did not get along. SUF 8. Although the record contains ample evidence their conflict arose from job performance issues and personal incompatibility, it is utterly "devoid of evidence from which a reasonable trier of fact could find race discrimination." *McCray v. WestRock Servs., LLC*, 2023 WL 4291844, at *11 (C.D. Cal. June 5, 2023)

(granting summary judgment on FEHA racial discrimination/harassment claims). Daniels alleges Nomura also mistreated white people on Tour and "did a lot of abusive things . . . that had nothing to do with race," further weighing against an inference of racial animus. SUF 81.

Without more, Daniels' subjective belief that everything Nomura did to her was based on race cannot preclude summary judgment. *See, e.g.*, *Medina v. Donahoe*, 854 F. Supp. 2d 733, 751-52 (N.D. Cal. 2012) (MSJ granted where plaintiff "presented no evidence of hostile conduct based on race besides her conclusory 'gut feeling'"); *Vanhorn v. Hana Grp., Inc.*, 979 F. Supp. 2d 1083, 1098 (D. Haw. 2013) (supervisor "'repeatedly yelled at[,] demeaned'" and "often wrote false reports about her," but offered only "conclusory allegations" that the conduct was based on race); *Alvarado v. Colvin*, 2016 WL 370681, at *6 (C.D. Cal. Jan. 28, 2016) (reasonable juror could not infer "rude, disrespectful, and disruptive" conduct "was motivated by racially discriminatory animus"); *see also cf. Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005) ("conclusory statements of bias do not carry the moving party's burden" on summary judgment).

### 2.   <u>The Alleged Harassment Is Not Sufficiently Severe or Pervasive.</u>

Daniels does not allege any severe incidents involving derogatory racial slurs, epithets or physical threats directed to her or which she personally observed. SUF 74, 80. Nomura's alleged recounting of comments purportedly made by Lizzo outside of Daniels' presence is not sufficiently severe to alter the conditions of her employment. SUF 83. *See Adeyemi v. Garland*, 2024 WL 4467998, at *18 (C.D. Cal. July 18, 2024) ("disturbing evidence" of racism against other Black employees insufficient without evidence of timing/frequency of coworkers' comments about hanging him or posting photo of noose with his name on it).

Nomura allegedly making a snapping gesture to another employee is not severe enough to alter the conditions of employment. SUF 72-73. Indeed, courts have found

conduct far more extreme, overtly racial and frequent insufficient as a matter of law. *See, e.g.*, *Manatt v. Bank of America, NA*, 339 F.3d 792, 798-99 (9th Cir. 2003) (no hostile environment where Chinese plaintiff overheard racially offensive jokes/terms, coworkers once "pulled their eyes back with their fingers in an attempt to imitate or mock the appearance of Asians"); *Vasquez*, 349 F.3d at 642-43 (only specific allegations were coworker's statements that plaintiff had "a typical Hispanic macho attitude" and should transfer because "Hispanics do good in the field"); *Kennedy v. UMC Univ. Med. Ctr.*, 203 F. Supp. 3d 1100, 1107-08 (D. Nev. 2016) (supervisor described people as "Black lady/guy" and told plaintiff "she did not look or sound black," with court observing this "may be considered impolite or inappropriate by some, [but] it is not objectively pejorative or abusive"). Daniels may not have liked the way Nomura allegedly behaved, but that is not actionable under Title VII.

**D.     *Plaintiff's Third through Fifth Claims for Disability Discrimination in Violation of the ADA***

**1.     Plaintiff Is Not Disabled.**

To establish any prima facie case under the ADA, Daniels must show she was disabled within the meaning of the statute. *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012). The ADA defines "disability" as "a physical . . . impairment that substantially limits one or more of the major life activities," such as "caring for oneself, . . . seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, . . . and working." " 42 U.S.C. §§12102(1)(A)-(2)(A).

To determine if an impairment is substantially limiting, courts consider "the nature and severity of the plaintiff's impairment, the duration or expected duration of the impairment, as well as the permanent or long term impact." *Rohr v. Salt River Project Agric. Imp. & Power Dist.*, 555 F.3d 850, 858 (9th Cir. 2009) (internal quotations omitted); *Ellis v. City of Reedley*, 2007 WL 1098571, at *11 (E.D. Cal. Apr. 12, 2007) (although temporary condition may be a disability, it "must have at least a minimal

duration . . . sufficient to constitute an actual limitation of a major life activity, as opposed to simply the need to take a day off").

None of Plaintiff's purported impairments could be considered severe or long-term. For example, "temporary injuries such as broken or fractured bones 'do not generally qualify as a disability within the meaning of the ADA.'" *Parks v. Port of Oakland*, 2017 WL 2840704, at *4 (N.D. Cal. July 3, 2017). By the same logic, a less severe injury such as Daniels' purported rolled ankle is not a disability. SUF 93-96. The same is true of minor cuts and mild, fleeting allergy symptoms. SUF 116,120-122; *see Alphonsis v. Century Reg'l Det. Facility*, 2017 WL 11505981, at *12 (C.D. Cal. Sept. 11, 2017) (no ADA disability for two allergic reactions not requiring hospitalization).

Pain that does not interfere with a plaintiff's daily activities or job cannot establish a disability. *Square v. Potter*, 2009 WL 10671413, at *6-7 (C.D. Cal. June 22, 2009), *aff'd sub nom. Square v. Donahoe*, 430 F. App'x 633 (9th Cir. 2011) (MSJ granted where plaintiff alleged daily back and knee pain did not interfere with work duties when she took occasional breaks); *Rue v. Hickman's Egg Ranch Inc.*, 2016 WL 558412, at *3 (D. Ariz. Feb. 12, 2016) (broken ankle not a disability where plaintiff was treated for less than two months and currently had no restrictions from walking, standing or working); *Stanley-Bey v. San Quentin State Prison*, 2018 WL 6334984, at *2 (N.D. Cal. Dec. 3, 2018) (allegations plaintiff had "difficulty negotiating an upper bunk and upper-tier cell" did not constitute substantial limitation). Plaintiff continued to perform her work duties without accommodations despite alleged pain and discomfort, and took measures of her own to address her alleged injuries and conditions. SUF 99. The things Daniels did ***not*** do – ask for crutches or medical care as soon as she hurt her foot, *see* a doctor back home – are objectively unreasonable for someone claiming the substantial limitation of major life activities required for ADA protection. SUF 96-98,103-107,111-112.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

### 2. **Daniels Cannot Establish ADA Discrimination.**

Daniels' wrongful termination claim is subject to the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 417 U.S. 792 (1973). *See Curley v. City of N. Las Vegas*, 772 F.3d 629, 632 (9th Cir. 2014). The employee bears the initial burden to establish a *prima facie* case of discrimination. *Ibid.* If satisfied, the burden then shifts to the employer to establish "a legitimate, nondiscriminatory" reason for the adverse employment action. *Ibid.* Finally, the burden shifts back to the employee to provide specific, substantial evidence of pretext. *Ibid.*

Even if Plaintiff could present evidence of a disability under the ADA, her termination had nothing to do with her alleged disabilities. SUF 127-128. Daniels' threadbare and conclusory allegations are belied by the undisputed material facts and admissible evidence regarding why she was fired: her failure and refusal to follow the rules or work productively with Nomura. *Ibid.* BGBT terminated her employment for legitimate, non-discriminatory reasons and Daniels has no evidence to suggest otherwise.

### 3. **BGBT Had No Duty to Accommodate.**

BGBT had no duty to accommodate Plaintiff because she did not provide BGBT notice of a disability interfering with major life activities and requiring accommodations and, in any event, was able to perform the essential functions of her job without such accommodations.

In order to prevail on a failure to accommodate claim, a plaintiff must show "the existence of a reasonable accommodation that would have enabled [her] to perform the essential functions of an available job." *Aviles v. Alutiiq Sec. & Tech.*, 2012 WL 12905874 at *6 (S.D. Cal. June 15, 2012), *aff'd,* 537 F. App'x 753 (9th Cir. 2013); *see also* 29 C.F.R. §1630.2(o)(1)(ii) (defining reasonable accommodation to include "modifications or adjustments . . . that enable a qualified individual with a disability to perform the essential functions of that position"). Here, Plaintiff testified she was able to do her job well and her own minimal steps were sufficient to address her alleged

temporary injuries and ailments. SUF 97,99-101,116,120-121,126. Because she testified she was able to perform (and excel at) her job *without* accommodations, this claim for relief must fail. *Roloff v. SAP Am., Inc.*, 432 F. Supp. 2d 1111, 1120 (D. Or. 2006) (summary judgment granted "in light of plaintiff's concession that he was able to perform those functions without reasonable accommodations").

Under the ADA, an employer is "not [ ] expected to accommodate disabilities of which it is unaware." 29 C.F.R. §1630.9. Generally, a disabled employee "bears the responsibility to inform the employer that an accommodation is needed." *Foster v. City of Oakland*, 2008 WL 3286968, at *2 (N.D. Cal. Aug. 5, 2008) (internal citations omitted); *accord Lewis v. CoreCivic of Tenn., LLC*, 2023 WL 2534619, at *2 (S.D. Cal. Mar. 15, 2023) (employee must communicate she "has a disability that requires some sort of accommodation in order for the employee to be able to perform [her] work duties") (internal citations omitted). Accordingly, Daniels' simply mentioning her foot/ankle was hurt or she was not feeling well cannot establish BGBT's knowledge. SUF 103,114,117,123-124.

Daniels did not complain to BGBT Management that she needed accommodations for her right foot/ankle. She confirmed she did not tell BGBT Management she needed medical care. SUF 103. Daniels' only text to Gugliotta concerning her foot made no mention of pain, let alone an impairment requiring an accommodation. SUF 130. This is insufficient to establish BGBT's knowledge. Daniels' uncorroborated and general claims that she sought accommodations are not enough either. Daniels did not request any accommodation from BGBT Management for her broken acrylic nails. SUF 113-116. Daniels purportedly asked Nomura if there was someone she could see for her purported allergic reaction, but she did not request medical care or any accommodation from BGBT Management. SUF 117-118,123-124.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

### 4.    Failure to Engage in the Interactive Process Is Not a Standalone Claim Under the ADA.

"[T]here is no independent cause of action under the ADA for failing to engage in an interactive process." *Weeks v. Union Pac. R.R. Co.*, 137 F. Supp. 3d 1204, 1217 (E.D. Cal. 2015). This only constitutes an element of a disability discrimination claim. *See, e.g.*, *Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018).

### E.    *Plaintiff's Sixth and Seventh Claims for Retaliation*

The *McDonnell Douglas* burden-shifting analysis also applies to Plaintiff's ADA and FLSA retaliation claims. *See Brown v. City of Tucson*, 336 F.3d 1181, 1186-87 (9th Cir. 2003). Even if Daniels could satisfy her initial burden by establishing that she engaged in protected activity and demonstrating a causal link between that and her termination (she cannot), BGBT terminated her employment for legitimate, non-retaliatory reasons and Daniels has no evidence to suggest otherwise. *McAlindin v. Cnty. of San Diego*, 192 F.3d 1226, 1238 (9th Cir. 1999).

### 1.    Plaintiff Cannot Establish a *Prima Facie* Case of ADA Retaliation.

Daniels cannot demonstrate "an objectively reasonable good faith belief" that she was engaged in statutorily protected activity. *Volis v. Housing Auth. of City of Los Angeles Emps.*, 2014 WL 12675082, at *5-6 (Jan. 16, 2014), *aff'd*, 670 F. App'x 543 (9th Cir. 2016) (plaintiff could not reasonably believe that denial of request for accommodation unrelated to disability was unlawful); *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998) (*abrogation on other grounds as recognized by Thomas v. Atlanta Pub. Schs.*, 2024 WL 2992938, at *6 (11th Cir. 2024)) (conclusory assertion of disability alone is not objectively reasonable). She could not reasonably believe that a rolled ankle, broken acrylic nails or feeling "woozy" are disabilities under the ADA.

Daniels cannot point to temporal proximity to create an inference of a causal link between her termination and her purported accommodation requests. Daniels rolled her

31

ankle in Oslo (the first Tour stop) and Daniels cannot identify the date, location and/or circumstances in which she allegedly requested accommodations from BGBT Management. SUF 129-131. Daniels could not even recall when and where she broke her nails or whether BGBT Management was aware of this purported disability. SUF 132-133,135. Finally, Daniels first informed BGBT Management of her allergic reaction *after* the decision to terminate her employment was made. SUF 134,136.

## 2.    __Plaintiff Cannot Establish a *Prima Facie* Case of FLSA Retaliation.__

FLSA prohibits an employer from retaliating against an employee who complains about violations of the statute's wage and hour provisions and who asserts her wage and hour rights under the law. *Lambert v. Ackerley*, 180 F.3d 997, 1004-05 (9th Cir. 1999). "A complaint must be sufficiently clear and detailed for a reasonable employer to understand it . . . as an assertion of rights protected by the statute and a call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 13-14 (2011) (FLSA complaint requires "some degree of formality" so the employer has "fair notice" that employee's complaint could subject employer to retaliation claim). There is no evidence Daniels made such a complaint. SUF 139. The only allegation in the SAC attributing knowledge of her purported FLSA complaint to BGBT is made on information and belief. SAC ¶141. Without any evidence she engaged in protected activity, Daniels cannot establish a causal link to her termination.

## 3.    __BGBT Terminated Plaintiff for Legitimate, Non-Retaliatory Reasons.__

Even if Plaintiff had evidence to establish a *prima facie* case of retaliation, her termination had nothing to do with her alleged accommodation requests or purported complaints about FLSA violations. SUF 137-38,140-142; *see* Section III.D.2.

32

## IV.  **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court grant summary judgment in its favor and against Plaintiff as to all claims for relief or, in the alternative, partial summary judgment as to those claims for relief the Court deems appropriate.

Dated:  July 18, 2025

LAVELY & SINGER
PROFESSIONAL CORPORATION
MARTIN D. SINGER
MICHAEL E. WEINSTEN
MELISSA Y. LERNER


By:   *Melissa Y. Lerner*
    MELISSA Y. LERNER
Attorneys for Defendants
MELISSA JEFFERSON aka LIZZO,
BIG GRRRL BIG TOURING, INC. and
CARLINA GUGLIOTTA

33

## CERTIFICATE OF COMPLIANCE PURSUANT TO L.R. 11-6.2

The undersigned, counsel of record for Defendant Big Grrrl Big Touring, Inc. certifies that this brief contains 6,985 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 18, 2025

LAVELY & SINGER
PROFESSIONAL CORPORATION
MARTIN D. SINGER
MICHAEL E. WEINSTEN
MELISSA Y. LERNER


By:  *Melissa Y. Lerner*
     MELISSA Y. LERNER
Attorneys for Defendants
MELISSA JEFFERSON aka LIZZO,
BIG GRRRL BIG TOURING, INC. and
CARLINA GUGLIOTTA

34