1  **MARTIN D. SINGER (SBN 78166)**
   mdsinger@lavelysinger.com
2  **MICHAEL E. WEINSTEN (SBN 155680)**
   mweinsten@lavelysinger.com
3  **MELISSA Y. LERNER (SBN 285216)**
   mlerner@lavelysinger.com
4
5  **LAVELY & SINGER**
   **PROFESSIONAL CORPORATION**
6  2049 Century Park East, Suite 2400
   Los Angeles, California 90067-2906
7  Telephone: (310) 556-3501
8
9  Attorneys for Defendant
   BIG GRRRL BIG TOURING, INC.
10
                    **UNITED STATES DISTRICT COURT**
11
                    **CENTRAL DISTRICT OF CALIFORNIA**
12

| | |
|---|---|
| ASHA DANIELS, an Individual,<br><br>                Plaintiff,<br><br>        vs.<br><br>BIG GRRRL BIG TOURING, INC., a Delaware Corporation; CAPS PAYROLL, an unknown California Business Organization; MELISSA JEFFERSON (aka "LIZZO"), as an Individual; CARLINA GUGLIOTTA, as an Individual; AMANDA NOMURA, as an Individual, and DOES 1 through 10, inclusive,<br><br>                Defendants. | Case No.  2:24-cv-03571 FLA (PVCx)<br>[Hon.  Fernando L. Aenlle-Rocha]<br><br>**DEFENDANT BIG GRRRL BIG TOURING, INC.'S STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date:  August 22, 2025<br>Time: 1:30 p.m.<br>Hon. Fernando L. Aenlle-Rocha<br>Courtroom:  6B |

7488-4

Pursuant to Local Rule 56-1, Defendant BIG GRRRL BIG TOURING, INC. ("BGBT" or "Defendant") submits its Statement of Uncontroverted Facts in support of its Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment.

**UNCONTROVERTED FACTS**

## I.  THE PARTIES

| | Undisputed Fact | Evidence |
|---|---|---|
| 1. | Plaintiff Asha Daniels ("Plaintiff" or "Daniels") worked for BGBT from February 14, 2023 to March 5, 2023. | Declaration of Melissa Y. Lerner ("Lerner Decl.") ¶ 4, Ex. 3 (Excerpts from Transcript of June 2, 2025 Deposition of Asha Daniels) [hereinafter, **"6/2 Daniels Dep. Tr."**] at 8:13-21, 9:21-24. |
| 2. | Plaintiff was hired by BGBT to work from February 14 through March 17, 2023 as the "Wardrobe Assistant" on the European/United Kingdom leg of Melissa Jefferson pka Lizzo's ("Lizzo") arena tour, The Special Tour ("Tour"). | 6/2 Daniels Dep. Tr. at 9:21-24; Lerner Decl. ¶ 15, Ex. 14 (Excerpts from Transcript of June 16, 2025 Deposition of Carlina Gugliotta) [hereinafter, **"Gugliotta Dep. Tr."**] at 10:1-12; Lerner Decl. ¶ 17, Ex. 16 (Excerpts from Transcript of June 18, 2025 Deposition of Chris Coffie) [hereinafter, **"Coffie Dep. Tr."**] at 35:13-37:5; Lerner Decl. ¶ 19, Ex. 18 **[Coffie Dep. Ex. I]** (email chain dated January 22-25, 2023 re Daniels' original travel itinerary). |
| 3. | Plaintiff was approached and recommended for the role of Wardrobe Assistant by Wardrobe Manager Amanda Nomura ("Nomura"). | **6/2 Daniels Dep. Tr.** at 175:12-16; **Gugliotta Dep. Tr.** at 10:1-12, 10:24-11:2, 11:13-14; Lerner Decl. ¶ 12, Ex. 11 (Excerpts from Transcript of December 9, 2024 Deposition of Amanda Nomura) [hereinafter, **"Nomura Dep. Tr."**] at 29:19-30:14, 63:11-64:10, 144:8-20. |
| 4. | Daniels reported to Nomura on Tour, but Nomura did not have the authority to make hiring, firing, promotion, or reassignment decisions, or decisions | **Gugliotta Dep. Tr.** at 66:18-21; **Nomura Dep. Tr.** at 80:11-14, 100:18-23, 105:19-22; Declaration of |

| Undisputed Fact | Evidence |
|---|---|
| about any other change in employment status. | Amanda Nomura (**"Nomura Decl."**) ¶ 3. |
| 5.   In the event of any employment, personnel, safety or medical issues, they were to be reported to Tour Manager Carlina Gugliotta ("Gugliotta"), Production Manager Chris Coffie ("Coffie") and/or Production Coordinator Dulce Martin ("Martin") (collectively, "BGBT Management"), whose responsibility it was to address such matters. | **Nomura Decl.** ¶ 3; Gugliotta Dep. Tr. at 8:17-9:10; **Coffie Dep. Tr.** at 25:8-28:16, 67:8-69:11, 92:10-93:1. |
| 6.   Nomura was not part of BGBT Management; rather, she reported to BGBT Management. | **Nomura Decl.** ¶ 3; **Nomura Dep. Tr.** at 165:20-24; **Gugliotta Dep. Tr.** at 49:12-16. |
| 7.   Daniels' responsibilities as Wardrobe Assistant included taking care of wardrobe for Lizzo's back-up dancers (the "Big Grrrls"), laundering and mending the Big Grrrls' garments, delegating tasks to local workers assisting with wardrobe, making sure the Big Grrrls had what they needed for their costumes, transporting wardrobe items during load-in and load-out at each venue and taking care of Lizzo's costumes when necessary. | **6/2 Daniels Dep. Tr.** at 9:25-10:18, 125:9-23; **Gugliotta Dep. Tr.** at 11:15-12:7; **Nomura Dep. Tr.** at 28:5-29:18, 62:7-9, 73:17-74:3, 80:15-81:17, 92:10-13, 93:12-19, 108:7-21, 117:7-118:13, 118:18-120:2, 122:5-124:20, 151:11-153:10; Lerner Decl. ¶ 14, Ex. 13 **[Nomura Dep. Ex. 12]** (February 2023 email from Nomura to Daniels). |
| 8.   From the time Daniels joined the tour, Daniels and Nomura did not get along as colleagues. | **Gugliotta Dep. Tr.** 14:17-20:10, 20:17-24:9, 24:16-25:12, 31:3-8, 32:15-33:13, 70:10-71:8, 72:10-73:13, 104:24-105:1; Lerner Decl. ¶ 16, Ex. 15 **[Gugliotta Dep. Ex. 25]** (text message exchange between Gugliotta and Daniels dated February to March 2023); **Nomura Dep. Tr.** at 87:16-19, 91:2-92:2, 100:24-103:8, 103:17-104:11 , 157:6-12; **Nomura Decl.** ¶ 4, Ex. A; Lerner Decl. ¶ 21, Ex. 20 (Excerpts from Transcript of June 5, 2025 Deposition of Crystal Williams) |

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS

| Undisputed Fact | Evidence |
|---|---|
| | [hereinafter, **"Williams Dep. Tr."**] at 25:20-26:5, 43:8-44:2, 44:20-45:16; **6/2 Daniels Dep. Tr.** at 50:2-9, 112:7-13, 197:14-25, 199:22-200:11; Lerner Decl. ¶ 9, Ex. 8 (Excerpts from June 17, 2025 Deposition of Asha Daniels [hereinafter, **"6/17 Daniels Dep. Tr."**] at 234:21-235:9, 335:20-338:23, 339:21-25, 340:5-14; Lerner Decl. ¶ 11, Ex. 10 **[Daniels Dep. Ex. 31]** (messages dated mid-February 2023) (Daniels writes, *"I dont like the way these white people on production operate"*); Lerner Decl. ¶ 13, Ex. 12 **[Nomura Dep. Ex. 10]** (screenshot of February 2023 text message exchange between Daniels and Nomura). |
| 9. Daniels believes that Nomura misrepresented the responsibilities she would have as Wardrobe Assistant in their communications prior to Daniels accepting the role. | **6/2 Daniels Dep. Tr.** at 215:18-216:6; **6/17 Daniels Dep. Tr.** at 274:7-275:9; **Williams Dep. Tr.** at 43:8-44:2, 44:20-45:16. |
| 10. On March 5, 2023, Plaintiff was terminated by BGBT in Paris, France prior to Lizzo's concert at Accor Arena that night. | **Gugliotta Dep. Tr.** at 12:12-14; **6/2 Daniels Dep. Tr.** at 8:13-21. |
| 11. After she was terminated, Plaintiff stayed at Accor Arena to watch the show, spend time with opener Runway and her dancers and the Big Grrrls backstage. | **Gugliotta Dep. Tr.** at 37:17-38:22; **Coffie Dep. Tr.** at 102:6-22, 103:17-108:5, 109:5-20 (describing Daniels' disruptive and inappropriate behavior backstage); **Nomura Dep. Tr.** at 149:21-150:24, 171:7-172:19 (same); **Williams Dep. Tr.** at 48:6-49:1; 6/17 **Daniels Dep. Tr.** at 256:11-257:17, 260:20-261:7; Lerner Decl. ¶ 10, Ex. 9 **[Daniels Dep. Ex. 26]** at p. 2 (Instagram post of photograph of Daniels and Runway backstage on March 5, 2023). |

4

| Undisputed Fact | Evidence |
|---|---|
| 12. Daniels was paid for the entire period for which she was hired, through March 17, 2023, despite being terminated on March 5, 2023. | Declaration of Ashley Joshi ("**Joshi Decl.**") ¶ 3, Ex. A (payroll records for Daniels reflecting payment through March 17, 2023); **6/17 Daniels Dep. Tr.** at 340:24-342:22. |
| 13. During Plaintiff's employment, she worked on shows in the following European cities: Oslo, Norway; Copenhagen, Denmark; Hamburg, Germany; Amsterdam, Netherlands; Antwerp, Belgium; Cologne, Germany; Berlin, Germany; Milan, Italy; Zurich, Switzerland; and Paris, France. | **6/2 Daniels Dep. Tr.** at 181:21-183:1; **Coffie Dep. Tr.** 31:8-32:14; Lerner Decl. ¶ 18, Ex. 17 **[Coffie Dep. Ex. G]** (Crew Daysheets for February 15-March 5, 2023). |
| 14. Plaintiff was never hired by BGBT as an independent contractor or employee to design costumes for Lizzo or her background dancers (the "Big Grrrls") to be worn during any leg of the Tour. | **6/2 Daniels Dep. Tr.** at 8:13-9:20; **6/17 Daniels Dep. Tr.** at 384:4-15; **Nomura Dep. Tr.** at 30:17-31:18. |
| 15. Prior to her employment at BGBT, Plaintiff was a project manager for designer Mondo Guerra, who was hired to create costumes for Lizzo and the Big Grrrls to be worn during the Tour. | **6/2 Daniels Dep. Tr.** at 8:13-9:20; **6/17 Daniels Dep. Tr.** at 380:2-381:3; Lerner Decl. ¶ 10, Ex. 9 **[Daniels Dep. Ex. 26]** at p. 1 (Daniels' website landing page); **Nomura Dep. Tr.** at 30:7-14, 38:24-39:5, 144:8-20. |
| 16. Plaintiff never met or spoke to Lizzo during her time on the Tour. | **6/2 Daniels Dep. Tr.** at 10:19-11:7; Lerner Decl. ¶ 23, Ex. 22 (Plaintiff's Objections and Responses to BGBT's Requests for Admission, Set One) at 5:7-17; Lerner Decl. ¶ 23, Ex. 23 (Plaintiff's Signed Verification for RFA Responses). |
| 17. Lizzo is Black, all of Lizzo's dancers on the Tour were women of color, and the Tour was about inclusivity. | **6/2 Daniels Dep. Tr.** at 337:10-338:7; **6/17 Daniels Dep. Tr.** at 172:22-173:19; **Gugliotta Dep. Tr.** at 23:19-24:5. |

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS

## II. MUCH OF THE CONDUCT ALLEGED BY PLAINTIFF IS NOT ACTIONABLE AS SEXUAL HARASSMENT, RACIAL HARASSMENT OR DISABILITY DISCRIMINATION

| | Uncontroverted Fact | Evidence |
|---|---|---|
| 18. | Much of Plaintiff's operative SAC describes alleged conduct that is not actionable under Title VII or the ADA. | ECF No. 3-1 at pp. 326-73 (Second Amended Complaint) [hereinafter, **"SAC"**] ¶¶ 19-23, 29, 44, 58-60, 114-118, 124, 141-145, 151. |
| 19. | Plaintiff alleges that Nomura made her come straight to work after she landed in Oslo, without giving her time to rest after a long flight. | **6/2 Daniels Dep. Tr.** at 112:3-113:14. |
| 20. | Plaintiff alleges that Nomura called Lizzo and the Big Grrrls "fat" and that Nomura was "fatphobic." | **SAC** ¶¶ 24, 61, 119, 146; **6/2 Daniels Dep. Tr.** at 50:2-12. |
| 21. | Plaintiff alleges that Nomura yelled at her when she lost her walkie talkie and spoke to Production Coordinator Martin about it. | **6/2 Daniels Dep. Tr.** at 187:4-189:16. |
| 22. | Plaintiff alleges that Nomura yelled at her when she broke her cell phone. | **6/2 Daniels Dep. Tr.** at 191:10-21. |
| 23. | Nomura told Plaintiff she could not wear Crocs and had to wear closed-ankle and closed-toe shoes backstage. | **SAC** ¶¶ 27, 74, 92, 122, 149, 165; **6/2 Daniels Dep. Tr.** at 197:2-25, 199:22-200:11; Lerner Decl. ¶ 8, Ex. 7 **[Daniels Dep. Ex. 7]** (February 20, 2023 email from Martin re PPE); **Gugliotta Dep. Tr.** at 32:15-33:13; **Coffie Dep. Tr.** at 93:13-94:13; **Nomura Dep. Tr.** at 100:24-103:8, 103:17-104:11; **Nomura Decl.** ¶ 4, Ex. A. |
| 24. | Plaintiff alleges Nomura called Lizzo's opener Bree Runway a "bitch." | **6/2 Daniels Dep. Tr.** at 192:5-194:6. |
| 25. | Plaintiff alleges that Nomura did not like Martin and called her a "bitch." | **6/2 Daniels Dep. Tr.** at 200:25-201:6. |
| 26. | Plaintiff alleges that Nomura threatened to "kill a bitch" and "stab a bitch." | **SAC** ¶¶ 29, 124, 151, 166; **6/2 Daniels Dep. Tr.** at 64:11-20. |

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS

| Uncontroverted Fact | Evidence |
|---|---|
| 27. Plaintiff alleges that Nomura said she was going to do "hard drugs" in Amsterdam. | SAC ¶¶ 31, 46, 126, 153; **6/2 Daniels Dep. Tr.** at 59:16-25, 68:10-71:9, 72:1-9. |
| 28. Plaintiff alleges that people on Tour talked about buying and using hard drugs. | SAC ¶¶ 31, 46, 126, 153; **6/2 Daniels Dep. Tr.** at 59:16-25, 68:10-71:9, 72:1-9. |
| 29. Plaintiff alleges that Nomura drank while working from a bottle of alcohol used to clean stains on costumes that could not be laundered. | **6/2 Daniels Dep. Tr.** at 206:3-15. |
| 30. Plaintiff alleges that Nomura promised her she would not have to move heavy things on Tour, but expected and directed her to do so when she arrived. | SAC ¶¶ 28, 75, 93, 123, 150; **6/2 Daniels Dep. Tr.** at 215:18-216:6; **6/17 Daniels Dep. Tr.** at 274:7-275:9. |
| 31. Plaintiff testified without specificity that she allegedly complained to other people on Tour about Nomura bullying her. | **6/2 Daniels Dep. Tr.** at 104:2-108:1, 107:15-108:1. |
| 32. Plaintiff alleges that she overheard people talking about buying and doing "hard drugs." | **6/2 Daniels Dep. Tr.** at 68:10-71:9, 72:1-73:3. |

## III. PLAINTIFF'S FIRST CLAIM FOR RELIEF FOR HOSTILE WORK ENVIRONMENT SEXUAL HARASSMENT IN VIOLATION OF TITLE VII FAILS AS A MATTER OF LAW BECAUSE PLAINTIFF WAS NOT HARASSED BECAUSE OF HER SEX AND THE ALLEGED HARASSMENT WAS NOT SUFFICIENTLY SEVERE OR PERVASIVE TO ALTER THE CONDITIONS OF EMPLOYMENT AND CREATE A HOSTILE OR ABUSIVE WORK ENVIRONMENT

| Uncontroverted Fact | Evidence |
|---|---|
| 33. Plaintiff's hostile work environment sexual harassment claim is based in part on a photograph of an equipment case that was decorated with what Plaintiff perceived to be sexually graphic images. | SAC ¶¶ 30, 41, 45, 125, 152; **6/2 Daniels Dep. Tr.** at 15:9-16:12, 19:18-30:21; Lerner Decl. ¶ 7, Ex. 6 [Daniels Dep. Ex. 4] [hereinafter, **"EEOC Charge"**] ¶ 17. |

7

| Uncontroverted Fact | Evidence |
|---|---|
| 34. Plaintiff was a member of a group WhatsApp chat entitled "LZO Special Tour – Crew" ("Crew WhatsApp") from some point on or after February 14, 2023 until she was removed from the group on March 13, 2023, eight days after her termination. | **6/2 Daniels Dep. Tr.** at 15:9-17:2, 16:13-18:14, 56:11-57:13; Lerner Decl. ¶ 5, Ex. 4 **[Daniels Dep. Ex. 2]** (Daniels' screenshot of March 2023 Crew WhatsApp messages). |
| 35. A crewmember sent a photograph of an equipment case decorated with at least two images of male genitalia ("Decorated Case") with a homosexual male crewmember posing next to it ("Case Photo") to the Crew WhatsApp on March 11, 2023, six days after Plaintiff was terminated from her employment by BGBT. | **6/2 Daniels Dep. Tr.** at 15:9-18:25, 19:18-24:19, 56:11-57:13; **6/17 Daniels Dep. Tr.** at 385:15-386:2; **Nomura Dep. Tr.** at 162:23-163:19; Lerner Decl. ¶¶ 5-6, Exs. 4 **[Daniels Dep. Ex. 2]** (Daniels' screenshot of March 2023 Crew WhatsApp messages) & 5 **[Daniels Dep. Ex. 3]** (Case Photo from Crew Whatsapp). |
| 36. Four unknown members of the Crew WhatsApp reacted to the Case Photo with emojis on or after March 11, 2023. | **SAC** ¶ 30; **6/2 Daniels Dep. Tr.** at 28:8-30:21, 56:11-57:13; Lerner Decl. ¶ 5, Ex. 4 **[Daniels Dep. Ex. 2]** (Daniels' screenshot of March 2023 Crew WhatsApp messages); **6/17 Daniels Dep. Tr.** at 385:15-386:2. |
| 37. For the first time at her deposition on June 2, 2025, Daniels claimed that she saw the Decorated Case multiple times over a single day while she was working on the Tour, but could not remember any details (including in what city and/or venue she saw the Decorated Case, where specifically it was located backstage, what else was in the room with the Decorated Case, how many times she saw the Decorated Case, who was in the room or why she needed to go in and out of that room to perform her work duties). | **6/2 Daniels Dep. Tr.** at 22:6-23:11, 30:22-39:5; *see generally* ECF No. 3-1 at pp. 4-48 [hereinafter, **"Complaint"**] (no mention of seeing Decorated Case in person during Tour); ECF No. 3-1 at pp. 128-184 (First Amended Complaint) [hereinafter, **"FAC"**] (no mention of seeing Decorated Case in person during Tour); SAC (no mention of seeing Decorated Case in person during Tour); **EEOC Charge** (no mention of seeing Decorated Case in person during Tour). |

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS

| Uncontroverted Fact | Evidence |
|---|---|
| 38. Plaintiff did not complain to BGBT Management about the Decorated Case that she allegedly saw backstage, and could not name anyone she complained to about the Decorated Case that she allegedly saw backstage. | **6/2 Daniels Dep. Tr.** at 39:14-40:20; **6/17 Daniels Dep. Tr.** at 304:20-307:3. |
| 39. According to Gugliotta and Coffie, the Decorated Case was created for a crewmember's birthday on March 11, 2023, and was kept in Gugliotta's office for the entirety of that single day, after which the decorations were removed. | **Gugliotta Dep. Tr.** at 25:13-26:6, 26:14-27:21; **Coffie Dep. Tr.** at 56:4-57:22, 87:15, 87:15-89:15; Lerner Decl. ¶ 22, Ex. 21 (Excerpts from Transcript of June 5, 2025 Deposition of Noelle Rodriguez) [hereinafter, **"Rodriguez Dep. Tr."**] at 57:20-58:7. |
| 40. No one complained to BGBT Management about the Decorated Case. | **Gugliotta Dep. Tr.** at 27:19-21; **Coffie Dep. Tr.** at 57:16-22. |
| 41. Although Plaintiff refers to the Case Photo being sent to the Crew WhatsApp in her declaration submitted to the EEOC under penalty perjury and all three iterations of her Complaint, none of these documents mentions Plaintiff's allegation that she saw the Decorated Case in person. | **6/17 Daniels Dep. Tr.** at 31:12-17 (Q. So just to be clear, is it your testimony now for the first time because you didn't swear to the EEOC about this, is it your testimony that this image that we are looking at here you saw this somewhere before it was sent to the group chat; is that correct? *A. That is correct.*); *see generally* **Complaint** (no mention of seeing Decorated Case in person during Tour); **FAC** (same); **SAC** (same); **EEOC Charge** (same). |
| 42. Nomura never talked about sex workers or sex clubs with Daniels. | **6/2 Daniels Dep. Tr.** at 51:11-12. |
| 43. Plaintiff's hostile work environment sexual harassment claim is based in part on her alleged exposure to a conversation about hiring sex workers, going to sex clubs and buying and doing illegal drugs that took place on the tour bus on the | **6/2 Daniels Dep. Tr.** at 50:2-53:2. |

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS

| Uncontroverted Fact | Evidence |
|---|---|
| way to Amsterdam ("Bus Conversation"). | |
| 44. Plaintiff recalls that Nomura allegedly participated in the purported Bus Conversation by laughing, but she cannot recall what Nomura was laughing at or any specific statements made by Nomura or anyone else about hiring sex workers or going to sex clubs. | **6/2 Daniels Dep. Tr.** at 57:14-59:25, 63:13-25. |
| 45. Plaintiff cannot recall (i) how many other people participated in the alleged Bus Conversation, their names, their biological sex or their appearance; (ii) where on the bus it took place; (iii) what time of day it occurred; or (iv) any specific statements made by any participant about sex workers, sex clubs or any other topic. | **6/2 Daniels Dep. Tr.** at 51:13-53:2, 57:15-71:9, 72:1-73:3, 73:7-74:12, 74:23-78:20, 79:4-84:7. |
| 46. Plaintiff testified that she recalled other instances in Amsterdam when members of the Tour allegedly talked about hiring sex workers, which she believed occurred backstage, but she could not recall any specific contents of these alleged conversations, when or where they took place, or the name, biological sex, appearance or number of people who participated in the alleged conversations. | **6/2 Daniels Dep. Tr.** at 85:10-24, 86:14-91:8. |
| 47. Plaintiff did not report the alleged Bus Conversation or other conversations about sex workers or sex clubs to BGBT Management. | **6/2 Daniels Dep. Tr.** at 84:8-20, 103:18-104:2; **Coffie Dep. Tr.** at 86:10-87:4; **Gugliotta Dep. Tr.** at 24:16-25:12. |
| 48. Plaintiff's hostile work environment sexual harassment claim is based in part on a group of people from the Tour allegedly inviting her to go to | **6/2 Daniels Dep. Tr.** at 91:9-95:14; **SAC** ¶¶ 31, 46, 126, 153. |

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS

| Uncontroverted Fact | Evidence |
|---|---|
| a place in Amsterdam's Red Light District. | |
| 49.    Plaintiff cannot recall the name of the place she was invited to, what kind of establishment it was, when she received the invitation, where she was when she received the invitation or anything about the person(s) who invited her (including the number of people or their names, sex or appearance). | **6/2 Daniels Dep. Tr.** at 91:9-95:14. |
| 50.    Plaintiff declined the alleged invitation and did not go to the Red Light District. | **6/2 Daniels Dep. Tr.** at 95:13-14, 96:6-100:7; **SAC** ¶ 153. |
| 51.    Plaintiff did not report the alleged invitation to BGBT Management. | **6/2 Daniels Dep. Tr.** at 103:18-104:18. |
| 52.    Plaintiff testified for the first time at her deposition that her first cause of action for hostile work environment sexual harassment is based in part on a homosexual male coworker allegedly carrying around a bag of small penis-shaped candies or figurines ("Phallus Objects") and making sexual comments/jokes and lewd gestures with them, such as sticking his tongue out. | **6/17 Daniels Dep. Tr.** at 245:11-247:6, 247:16-248:16, 247:14-248:16, 248:20-249:12, 253:1-255:9; *see generally* **Complaint** (no mention of Phallus Objects or sexual harassment by homosexual coworker); **FAC** (same); **SAC** (same); **EEOC Charge** (same). |
| 53.    Plaintiff could not testify where or when she observed the Phallus Objects and sexual, lewd conduct; who was present; or any specific comments or jokes by the homosexual male coworker. | **6/17 Daniels Dep. Tr.** at 246:21-247:6, 247:14-248:16, 248:20-249:12. |
| 54.    Daniels did not complain to the crewmember about the alleged Phallus Objects and related conduct. | **6/2 Daniels Dep. Tr.** at 30:22-23; 6/17 Daniels Dep. Tr. at 251:4-252:15. |
| 55.    Plaintiff did not complain to BGBT Management or anyone else on Tour about any sexual harassment in the workplace. | **6/2 Daniels Dep. Tr.** at 102:16-104:18; Gugliotta Dep. Tr. at 14:17-20:10, 20:17-24:9, 24:16-25:12, 27:19-21, 29:1-30:9; Lerner Decl. ¶ 16, Ex. 15 **[Gugliotta** |

| Uncontroverted Fact | Evidence |
|---|---|
|  | **Dep. Ex. 25]** (text message exchange between Gugliotta and Daniels dated February to March 2023); **6/17 Daniels Dep. Tr.** at 246:13-16, 249:13-22 (at continued deposition 15 days later, Daniels testifies about purported conversation with Gugliotta about "everything that [she] kind of felt uncomfortable about," but cannot remember anything about the purported conversation, including time, place or specific statements by Daniels or Gugliotta), 304:20-307:3 (did not complain about alleged sexual harassment to Coffie or Martin); **Coffie Dep. Tr.** at 86:10-87:4. |
| 56. | Plaintiff's hostile work environment sexual harassment claim is based in part on Nomura's purported objectification of Plaintiff when Nomura allegedly told Plaintiff not to interact with Lizzo or her boyfriend and/or to "tone it down" and/or not dress attractively in front of Lizzo or her boyfriend. | **SAC ¶¶ 20, 44; 6/2 Daniels Dep. Tr.** at 50:2-12, 200:25-202:1, 217:2-6. |
| 57. | Plaintiff's hostile work environment sexual harassment claim is based in part on Nomura allegedly telling her that Lizzo's boyfriend was attracted to Nomura. | **SAC ¶¶ 20, 40, 44; 6/2 Daniels Dep. Tr.** at 201:21-202:1. |
| 58. | Plaintiff's sexual harassment claim is based in part on the allegation that the Big Grrrls had to change in tents backstage during shows without sufficient privacy, and that male crewmembers purportedly gawked, sneered and giggle at the Big Grrrls as they changed. | **SAC ¶¶ 21, 40.** |
| 59. | Former Big Grrrls Noelle Rodriguez, Crystal Williams and | Lerner Decl. ¶ 20, Ex. 19 (Transcript of June 4, 2025 Deposition of Arianna |

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS

| Uncontroverted Fact | | Evidence |
|---|---|---|
| | Arianna Davis never observed male crewmembers laughing or making fun of them when they changed in a tent backstage during a show. | Davis) [hereinafter, **"Davis Dep. Tr."**] at 75:17-76:10, 76:24-77:3; **Williams Dep. Tr.** at 34:1-38:7; **Rodriguez Dep. Tr.** at 56:16-57:1; **Gugliotta Dep. Tr.** at 28:6-30:9. |
| 60. | Plaintiff did not complain to BGBT Management about the Big Grrrls' purported insufficient privacy when changing or the alleged gawking, sneering and giggling of male crewmembers at the Big Grrrls when changing. | **6/2 Daniels Dep. Tr.** at 103:18-104:2; **Gugliotta Dep. Tr.** at 28:6-30:9; **Coffie Dep. Tr.** at 84:3-85:24, 86:8-87:14; **Nomura Dep. Tr.** at 154:17-156:12. |
| 61. | At her deposition, Plaintiff could not recall any other instance of sexual harassment with any specificity regarding content, speaker, place or time. | **6/2 Daniels Dep. Tr.** at 49:17-21, 50:21-51:6; 102:16-103:15; **6/17 Daniels Dep. Tr.** at 241:9-14, 245:6-10, 255:22-256:10. |
| 62. | Except for Nomura's purported statements to Daniels about interacting with Lizzo and her boyfriend and the alleged invitation to an unknown location in the Red Light District (which Daniels declined), none of the alleged sexually harassing conduct was directed at Daniels. | **SAC ¶¶** 45-47; **6/2 Daniels Dep. Tr.** at 41:15-18, 51:11-12, 50:2-53:2, 57:14-68:11, 73:7-74:12, 74:23-78:20, 79:4-84:2, 86:22-91:8, 94:23-95:14; **6/17 Daniels Dep. Tr.** at 246:2-6. |
| 63. | No one on Tour ever made sexual advances toward Daniels. | **6/2 Daniels Dep. Tr.** at 41:15-18. |
| 64. | Plaintiff believes she did a good job throughout her time on Tour, fulfilled her job duties and more despite any alleged sexual harassment. | **6/2 Daniels Dep. Tr.** at 108:3-111:6; **6/17 Daniels Dep. Tr.** at 250:11-251:3; **Williams Dep. Tr.** at 30:10-15; **Davis Dep. Tr.** at 52:18-53:3. |

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS

## IV. PLAINTIFF'S SECOND CLAIM FOR RELIEF FOR HOSTILE WORK ENVIRONMENT RACIAL HARASSMENT IN VIOLATION OF TITLE VII FAILS AS A MATTER OF LAW BECAUSE PLAINTIFF WAS NOT HARASSED BECAUSE OF HER RACE AND THE ALLEGED HARASSMENT WAS NOT SUFFICIENTLY SEVERE OR PERVASIVE TO ALTER THE CONDITIONS OF EMPLOYMENT AND CREATE A HOSTILE OR ABUSIVE WORK ENVIRONMENT

| | Uncontroverted Fact | Evidence |
|---|---|---|
| 65. | Plaintiff's hostile work environment racial harassment claim is based in part on Nomura allegedly telling her not to buy additional mirrors for the Big Grrrls or ask to move their dressing room to a larger room backstage, which Plaintiff perceived to be a racist microaggression. | SAC ¶¶ 23, 60, 118, 145; **6/2 Daniels Dep. Tr.** at 112:3-114:4. |
| 66. | Plaintiff's hostile work environment racial harassment claim is based in part on Nomura allegedly telling her not to give BGBT's extra stockings to the opening act, which Plaintiff perceived to be a racist microaggression. | SAC ¶¶ 23, 60, 118, 145; **6/2 Daniels Dep. Tr.** at 114:5-20, 115:1-18; **Nomura Dep. Tr.** at 88:12-89:17, 89:21-22; 132:21-133:17. |
| 67. | Plaintiff's hostile work environment racial harassment claim is based in part on Nomura allegedly telling Tour security to follow Runway, her tour manager and her back-up dancers on Instagram to try to catch them breaching security protocols so they would get kicked off the Tour. | **6/2 Daniels Dep. Tr.** at 116:22-117:25, 118:6-12, 121:2-17, 121:24-122:18. |
| 68. | Plaintiff perceives this alleged conduct by Nomura to be a racist microaggression because Runway, her tour manager and her back-up dancers "all happen to be Black women." | **6/2 Daniels Dep. Tr.** at 118:6-12, 121:2-17, 121:24-122:18. |

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS

| Uncontroverted Fact | Evidence |
|---|---|
| 69. Nomura had no authority to kick Runway, the opening act, off the Tour. | **6/2 Daniels Dep. Tr.** at 122:12-18; **Nomura Dep. Tr.** at 105:19-22. |
| 70. Plaintiff's hostile work environment racial harassment claim is based in part on Nomura allegedly telling Runway's tour manager that Runway and her dancers were not to interact with Lizzo's group or use Tour supplies. | **6/2 Daniels Dep. Tr.** at 122:19-123:11, 124:8-17, 124:21-24. |
| 71. Plaintiff's hostile work environment racial harassment claim is based in part on Nomura allegedly telling Plaintiff not to talk to Runway's team, which she perceived to be a racist microaggression. | **6/2 Daniels Dep. Tr.** at 176:3-9. |
| 72. Plaintiff's hostile work environment racial harassment claim is based in part on Nomura allegedly mimicking one of the Big Grrrls by snapping her fingers in a conversation with B Party Tour Manager Molly Gordon ("Gordon"). | **6/2 Daniels Dep. Tr.** at 159:23-160:11, 160:23-161:12, 162:12-23. |
| 73. Plaintiff could not identify anything said by Nomura or Gordon during this alleged conversation; did not know its context, which of the Big Grrrls was allegedly being discussed or whether Nomura was actually mimicking a Big Grrrl; or the date and location of this purported conversation. | **6/2 Daniels Dep. Tr.** at 160:23-162:3, 162:12-165:11. |
| 74. Nomura never used the term "ghetto" and did not personally observe Nomura or anyone else on Tour use derogatory racial slurs. | **6/2 Daniels Dep. Tr.** at 165:13-166:20, 203:12-24; **6/17 Daniels Dep. Tr.** at 244:4-13. |
| 75. Plaintiff's hostile work environment racial harassment claim is based in part on Nomura allegedly making | **6/2 Daniels Dep. Tr.** at 168:1-170:23, 171:4-174:7. |

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS

| Uncontroverted Fact | | Evidence |
|---|---|---|
| | fun of the dancers' costumes smelling bad, certain dancers smelling bad and one or more dancers soiling their costumes or having accidents on themselves, which Plaintiff perceived to be racist because she had worked with dancers before and had never witnessed anything like this. | |
| 76. | Plaintiff could not remember anything specific Nomura purportedly said about the dancers' costumes, smells or accidents; which dancers she allegedly made fun of; or any other details about when and where this alleged conduct took place, or anyone else who was present or participated. | **6/2 Daniels Dep. Tr.** at 168:1-170:23. |
| 77. | Plaintiff's hostile work environment racial harassment claim is based in part on Nomura allegedly making fun of Lizzo and the Big Grrrls, but Plaintiff could not identify any other specific comments, their context or where and when they occurred. | **6/2 Daniels Dep. Tr.** at 159:13-22. |
| 78. | Plaintiff's hostile work environment racial harassment claim is based in part on the allegation that Nomura sent three women home early (only one of whom was Black) out of the 30 or more local workers who assisted with wardrobe during Daniels' time on Tour, and allegedly referred to these three women as "dumb" and "lazy." | **6/2 Daniels Dep. Tr.** at 176:10-177:9, 177:14-178:21, 179:6-9, 180:15-181:10, 183:12-184:2. |
| 79. | Some of the local workers who were Black were not sent home early by Nomura. | **6/2 Daniels Dep. Tr.** at 181:3-5. |

16

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS

| Uncontroverted Fact | Evidence |
|---|---|
| 80. Nomura did not call Plaintiff "lazy," nor did Plaintiff ever hear Nomura call any other Black person on Tour "lazy." | **6/2 Daniels Dep. Tr.** at 184:10-12, 185:1-2, 185:5-9. |
| 81. Plaintiff testified that Nomura allegedly mistreated white local workers and BGBT. | **6/2 Daniels Dep. Tr.** at 125:5-8 (Q. What was the next thing that [Nomura] did that you found to be offensive? A. To be honest, every day she said something that was offensive), 185:11-186:10, 194:25-195:18, 195:19-24 ("[Nomura] also did a lot of abusive things to people that had nothing to do with race."), 196:3-24, 204:21-205:9. |
| 82. Plaintiff's hostile work environment racial harassment claim is based in part on Nomura allegedly saying Lizzo cannot dance or sing, is fake and is difficult to work with or please. | **6/2 Daniels Dep. Tr.** at 202:2-6, 203:25-204:12. |
| 83. Plaintiff's hostile work environment racial harassment claim is based in part on Nomura allegedly saying that Lizzo used racial slurs to speak negatively about high profile Black women. | **6/2 Daniels Dep. Tr.** at 203:15-204:24. |
| 84. Plaintiff's hostile work environment racial harassment claim is based in part on Gordon allegedly participating in purported conversations with Nomura (1) making fun of the Big Grrrls and Lizzo, and (2) saying Lizzo used racial slurs to speak negatively about high profile Black women; but she could not testify about any details and was unable to identify a single statement made by Gordon. | **6/17 Daniels Dep. Tr.** at 241:16-242:1, 242:12-245:1, 245:6-10. |
| 85. Daniels did not report Gordon's alleged conduct to BGBT Management. | **6/17 Daniels Dep. Tr.** at 243:16-18. |

17

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS

| Uncontroverted Fact | Evidence |
| --- | --- |
| 86. At her deposition, Plaintiff could not recall any other instance of racial harassment with any specificity regarding content, speaker, place or time. | **6/17 Daniels Dep. Tr.** at 241:9-14, 245:6-10, 255:22-256:10. |
| 87. Daniels did not allege in writing that she experienced or witnessed racial harassment. | **6/17 Daniels Dep. Tr.** at 298:4-299:21, 300:1-307:3. |
| 88. Gugliotta testified that Daniels did not complain about racial harassment. | **Gugliotta Dep. Tr.** at 22:25-23:9. |
| 89. Except for Nomura's purported instructions to Daniels not to obtain additional supplies or a bigger dressing room for the Big Grrrls, not to give Tour supplies to the opening act and not to interact with the opening act, none of the alleged instances of racial harassment was directed at Daniels. | **6/2 Daniels Dep. Tr.** at 112:3-114:4; 116:22-117:25, 122:19-123:11, 124:8-17, 124:21-24, 159:23-160:11, 160:23-162:3. |
| 90. Plaintiff believes she was able to perform her job well, executed all her responsibilities and went above and beyond despite alleged racial harassment. | **6/2 Daniels Dep. Tr.** at 108:3-111:6; Williams Dep. Tr. at 30:7-15, 31:5-12; Davis Dep. Tr. at 52:18-53:3. |

## V.  PLAINTIFF'S THIRD THROUGH FIFTH CLAIMS FOR RELIEF FOR VIOLATION OF THE ADA FAIL AS A MATTER OF LAW BECAUSE PLAINTIFF IS NOT DISABLED UNDER THE STATUTE, DID NOT REQUIRE ACCOMMODATIONS TO PERFORM THE ESSENTIAL FUNCTIONS OF HER JOB, DID NOT NOTIFY BGBT OF HER PURPORTED DISABILITIES AND/OR NEED FOR ACCOMMODATIONS AND WAS TERMINATED FOR LEGITIMATE, NON-DISCRIMINATORY REASONS

| Uncontroverted Fact | Evidence |
| --- | --- |
| 91. Plaintiff alleges that she suffered from the following "disabilities": an injury to her right foot/ankle, two | **6/2 Daniels Dep. Tr.** at 144:5-14, 144:24-145:15; **6/17 Daniels Dep. Tr.** at 235:12-239:7, 281:9-282:3, 282:8-283:2, |

| Uncontroverted Fact | | Evidence |
|---|---|---|
| | broken acrylic nails that caused her nailbeds to bleed and a potential allergic reaction on March 5, 2023. | **SAC ¶¶** 26-28, 36, 73-75, 79, 91-93, 97, 121-123, 131, 148-150, 158. |
| 92. | Plaintiff claims that she purportedly injured her right foot/ankle when Nomura allegedly ran over Plaintiff's right foot with a rolling rack backstage and pushed Plaintiff with both hands, which causing her to lose her balance and roll her ankle. | **6/2 Daniels Dep. Tr.** at 125:9-126:23, 127:10-19, 130:8-131:12, 132:5-16, 133:5-25. |
| 93. | Plaintiff did not suffer any broken bones or broken skin on her right foot/ankle. | **6/2 Daniels Dep. Tr.** at 143:16-144:4. |
| 94. | Plaintiff allegedly experienced bruising and swelling on her right foot and ankle. | **6/2 Daniels Dep. Tr.** at 144:5-14, 144:24-145:15. |
| 95. | Plaintiff has no photographs documenting the alleged injury to her right foot and ankle. | **6/2 Daniels Dep. Tr.** at 155:25-156:4. |
| 96. | Plaintiff's alleged injury to her right foot and ankle got better while she was on Tour and she did not seek medical attention after she was terminated and returned home. | **6/2 Daniels Dep. Tr.** at 153:17-154:16; **Williams Dep. Tr.** at 31:5-12 (did not observe Daniels having trouble walking); **Davis Dep. Tr.** at 54:3-56:25, 58:8-11, 87:9-12 (only observed Daniels limping on one day). |
| 97. | Plaintiff did not ask for over the counter pain medication at any of the hotels she stayed at on Tour; but she obtained some from a friend who came to visit her in Amsterdam. | **6/17 Daniels Dep. Tr.** at 277:23-278:1, 308:19-313:9; Coffie Dep. Tr. at 94:14-98:6; Lerner Decl. ¶ 24, Ex. 24 **[Daniels Dep. Ex. 29]** (Tour crewmember hotel vouchers). |
| 98. | Plaintiff did not try to get ice for her foot on the bus or at any of the venues the Tour stopped at. | **6/17 Daniels Dep. Tr.** at 279:7-280:24, 308:19-313:9; Lerner Decl. ¶ 24, Ex. 24 **[Daniels Dep. Ex. 29]** (Tour crewmember hotel vouchers). |
| 99. | Plaintiff allegedly iced her right foot and ankle at one of the hotels she stayed at on Tour. | **6/17 Daniels Dep. Tr.** at 278:12-279:6, 308:19-313:9; Lerner Decl. ¶ 24, Ex. 24 **[Daniels Dep. Ex. 29]** (Tour crewmember hotel vouchers). |

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS

| Uncontroverted Fact | Evidence |
|---|---|
| 100. Although Nomura allegedly told Plaintiff she could not wear Crocs while working backstage when Plaintiff's foot/ankle was purportedly painful and swollen, Daniels did wear Crocs when she deemed necessary. | **6/2 Daniels Dep. Tr.** at 197:2-25; **6/17 Daniels Dep. Tr.** at 258:6-259:25 ("I wore the Crocs when I had a particularly swollen ankle day."; "I would say after I injured my ankle it was probably at least half of the time . . ."); **Gugliotta Dep. Tr.** at 32:15-33:13; **Coffie Dep. Tr.** at 93:13-94:13; **Nomura Dep. Tr.** at 32:15-33:13, 94:25-96:6, 100:24-103:8, 103:17-104:11; **Nomura Decl.** ¶ 4, Ex. A (Feb. 25, 2023 notes); **Williams Dep. Tr.** at 30:16-31:14; **Davis Dep. Tr.** at 54:3-56:25, 58:8-11, 87:9-12; **Rodriguez Dep. Tr.** at 45:12-24 (Daniels wore Crocs at work in several cities on Tour). |
| 101. Plaintiff wore combat boots and gym shoes despite her alleged injury to her right foot and ankle. | **6/17 Daniels Dep. Tr.** at 257:19-260:8, 262:4-15. |
| 102. Plaintiff did not ask for crutches to accommodate her alleged right foot/ankle injury. | **6/2 Daniels Dep. Tr.** at 153:13-16. |
| 103. Plaintiff did not inform BGBT Management that she had suffered an injury to her right ankle/foot that required medical attention or for her to take time off. | **6/2 Daniels Dep. Tr.** at 147:4-8, 155:6-24, 156:5-7; **6/17 Daniels Dep. Tr.** at 304:20-307:3 (did not complain about any purported disabilities to Coffie or Martin); **Gugliotta Dep. Tr.** at 14:17-17:14, 31:1-32:14; Lerner Decl. ¶ 16, Ex. 15 **[Gugliotta Dep. Ex. 25]** (text message exchange between Gugliotta and Daniels dated February to March 2023); **Coffie Dep. Tr.** at 28:13-16, 93:2-12. |
| 104. On the day she allegedly suffered an injury to her right foot/ankle, Plaintiff did not ask anyone, including Nomura, to see a medical professional about her injury. | **6/2 Daniels Dep. Tr.** at 146:7-148:8. |
| 105. The next time Plaintiff and Nomura were backstage in the morning after Plaintiff purportedly suffered her foot/ankle injury, Plaintiff allegedly | **6/2 Daniels Dep. Tr.** at 145:23-147:3, 147:17-23, 148:9-151:19. |

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS

| Uncontroverted Fact | Evidence |
|---|---|
| asked Nomura if there was anyone on Tour she could see for medical care and Nomura purportedly said "no." | |
| 106. Nomura never told Plaintiff that she was not permitted to contact a doctor or other medical professional unaffiliated with the Tour to get her injury checked out. | **6/2 Daniels Dep. Tr.** at 152:1-153:12. |
| 107. Plaintiff told Nomura on other occasions that her right foot/ankle hurt, but did not ask her again about getting medical care for her injury. | **6/2 Daniels Dep. Tr.** at 151:17-25. |
| 108. Plaintiff allegedly asked for "better seating" and her request was denied. | **6/2 Daniels Dep. Tr.** at 156:7-15; **Davis Dep. Tr.** at 53:22-54:2 (chairs backstage). |
| 109. Plaintiff allegedly asked Nomura if she could switch to a bottom bunk on the tour bus and Nomura purportedly said no. | **6/2 Daniels Dep. Tr.** at 156:16-19, 157:17-22. |
| 110. Gugliotta testified that Plaintiff did not ask Gugliotta to switch to a bottom bunk on the tour bus. | **Gugliotta Dep. Tr.** at 33:14-34:3; **Nomura Dep. Tr.** at 97:18-99:1; **6/17 Daniels Dep. Tr.** at 268:10-270:8 (Daniels cannot remember date, location or what was said during purported in-person conversation with Gugliotta about switching bunks). |
| 111. Plaintiff did not ask anyone else on her tour bus to switch bunks with her. | **6/17 Daniels Dep. Tr.** at 266:20-268:9; **Davis Dep. Tr.** at 18:1-5 (on Davis' tour bus, people switched bunks by asking each other). |
| 112. Plaintiff did not request a ladder to access her bunk. | **6/17 Daniels Dep. Tr.** at 270:18-274:6. |
| 113. Plaintiff did not testify that she requested medical treatment from BGBT Management for her broken acrylic nails and alleged bleeding from the associated nailbeds. | **6/17 Daniels Dep. Tr.** at 282:8-284:21 (Q. Did you get a Band-Aid? A. Yes. Q. Okay. So you didn't seek medical treatment for the broken nails? A. I did and I was not given medical treatment. Q. Okay. What medical treatment did you ask for to treat the broken nails for which |

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS

| Uncontroverted Fact | Evidence |
|---|---|
| | you put Band-Aids on? A. That it would have been nice to see some type of medical professional. [. . .] Q. Is it your testimony that you asked to see a doctor because you broke two nails, yes or no? A. That's not what I said. Q. Did you ask to see – You said you wanted medical attention. What kind of medical attention were you expecting because you broke two nails? A. So a medical professional could be a doctor, it doesn't need to be, but when I've worked on other sets they have a medical professional, usually like an ambulance kind of person, medical professional, and they have things that are like rubber finger things that will fully protect your nails, won't let any, you know, water, anything that would further hurt, like anything that stings inside, and they could like properly gauze up and put those, like, finger rubber things on and, of course, like some pain medicine would have been nice. Q. So Band-Aids weren't good enough, you wanted rubber fingers; is that your testimony? A. So Band-Aids especially with your fingers when you work with your hands, you're washing things, they get wet, they fall off, alcohol can get into them and it sings, it's just painful and it makes, like, your hands feel like they're on fire.). |
| 114.  Plaintiff did not inform BGBT Management that she broke two acrylic nails purportedly causing her nailbeds to bleed. | **Gugliotta Dep. Tr.** at 30:13-24; **Coffie Dep. Tr.** at 100:24-102:5; **6/17 Daniels Dep. Tr.** at 304:20-307:3 (did not complain about any purported disabilities to Coffie or Martin). |
| 115.  Plaintiff did not request any accommodations for her alleged | **6/17 Daniels Dep. Tr.** at 282:8-284:21; **Gugliotta Dep. Tr.** at 30:13-24. |

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS

| Uncontroverted Fact | Evidence |
|---|---|
| broken acrylic nails and bleeding nailbeds. | |
| 116. Plaintiff performed her work duties after putting a Band-Aid on her allegedly bloody nailbeds. | **6/17 Daniels Dep. Tr.** at 282:8-283:2; **Nomura Dep. Tr.** at 154:17-155:9 (Band Aids available in dancers' area backstage), 98:2-16; 98:19-20, 158:14-159:7 (Daniels cut off remaining acrylic nails after one broke off). |
| 117. Plaintiff did not seek medical treatment from BGBT Management or require hospitalization for her alleged allergic reaction on March 5, 2023. | **6/17 Daniels Dep. Tr.** at 235:10-241:8, 325:4-9, 328:4-332:10. |
| 118. Plaintiff did not request any accommodations for her purported allergic reaction. | **Gugliotta Dep. Tr.** at 36:25-37:15; **Nomura Dep. Tr.** at 135:20-24**; 6/17 Daniels Dep. Tr.** at 304:20-307:3 (did not complain about any purported disabilities to Coffie or Martin). |
| 119. Plaintiff is not certain that she actually suffered an allergic reaction on March 5, 2023 and, if she did, what may have caused it. | **6/17 Daniels Dep. Tr.** at 313:10-314:21, 315:7-319:2, 322:1-325:18. |
| 120. Plaintiff testified that she performed her job responsibilities despite the mild symptoms of her alleged allergic reaction. | **6/17 Daniels Dep. Tr.** at 235:10-241:8, 315:7-318:7, 321:17-23, 324:23-325:18 (describing symptoms: "Like I felt unsettled, like my stomach felt unsettled. [. . .] Like I felt kind of out body and my skin felt itchy but like not rash itchy, just kind of like inflamed maybe, and I just felt like a little doozy, a little woozy. [. . .] I probably had a headache. [. . .] I often had a headache on tour, so I'm sure I had a headache as well, but I don't know if that is a direct reflection of the allergic reaction."), 328:4-329:2, 332:11-20. |
| 121. None of the witnesses who saw Plaintiff on March 5, 2023 testified that she looked ill. | **Gugliotta Dep. Tr.** at 38:23-39:4; **Davis Dep. Tr.** at 88:8-17; **Rodriguez Dep. Tr.** at 26:10-27:2; **Williams Dep. Tr.** at 44:20-16; **Nomura Dep. Tr.** at 139:19- |

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS

| Uncontroverted Fact | Evidence |
|---|---|
| | 140:13, 140:20-141:7, 149:2-20, 159:8-20. |
| 122. After taking a nap for 30 minutes, Plaintiff took a pill of unknown origin from a friend of hers in the catering department that resolved her purported allergy symptoms within one hour. | **6/17 Daniels Dep. Tr.** at 328:4-332:20. |
| 123. Plaintiff did not inform Gugliotta of her alleged allergy symptoms or their purported cause. | **Gugliotta Dep. Tr.** at 37:3-15, 38:23-39:4; **6/17 Daniels Dep. Tr.** at 321:24-323:22 (not sure if suffered allergic reaction or the cause). |
| 124. Plaintiff did not inform anyone else in BGBT Management about her alleged allergic reaction on March 5, 2023. | **Coffie Dep. Tr.** at 101:7-102:5; **6/17 Daniels Dep. Tr.** at 304:20-307:3 (did not complain about any purported disabilities to Coffie or Martin). |
| 125. BGBT had a first aid kit and a medical team on site in case of injury or illness. | **Coffie Dep. Tr.** at 25:8-28:11; 67:8-69:11, 92:10-93:1. |
| 126. Plaintiff was able to perform the essential functions of her job without accommodations despite her alleged disabilities. | **6/2 Daniels Dep. Tr.** at 108:3-6; **6/17 Daniels Dep. Tr.** at 260:9-10 (Q. So you found workarounds for your ankle? A. I did the best I could, yeah."), 282:8-283:2, 316:-319:2, 321:17-23, 328:4-329:2, 332:11-13. |
| 127. BGBT terminated Plaintiff because she failed and refused to comply with PPE requirements and other safety protocols; failed and refused to get along with Nomura; and resisted instructions from Nomura. | **Gugliotta Dep. Tr.** at 35:7-36:24, 32:15-33:13, 40:14-41:1, 61:11-63:16, 63:22-64:2; Lerner Decl. ¶ 16, Ex. 15 **[Gugliotta Dep. Ex. 25]** (text message exchange between Gugliotta and Daniels dated February to March 2023); **Nomura Dep. Tr.** at 88:2-89:17, 89:21-22, 94:25-96:6, 99:14-17, 99:22-100:5, 100:18-103:8, 103:17-104:11, 105:1-106:6, 117:7-118:13, 118:18-120:2, 122:5-124:20, 125:1-11, 137:25-138:24, 139:9-140:13, 140:20-141:7, 144:21-147:13, 149:2-150:1, 165:20-166:16; Lerner Decl. ¶ 13, Ex. 12 **[Nomura Dep. Ex. 10]** (screenshot of February 2023 text |

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS

| Uncontroverted Fact | Evidence |
|---|---|
| | message exchange between Daniels and Nomura); Lerner Decl. ¶ 14, Ex. 13 **[Nomura Dep. Ex. 12]** (February 2023 email from Nomura to Daniels); **Nomura Decl.** ¶ 4, Ex. A; **Coffie Dep. Tr.** at 93:13-94:13; **6/2 Daniels Dep. Tr.** at 125:2-8, 187:4-189:16, 189:19-190:23, 191:10-21, 199:22-200:11, 205:10-19, 209:22-210:15, 215:18-216:2; Lerner Decl. ¶ 8, Ex. 7 **[Daniels Dep. Ex. 7]** (February 20, 2023 email from Martin re PPE); **6/17 Daniels Dep. Tr.** at 318:8-19, 334:18-335:12, 335:17-338:23, 340:5-14; Lerner Decl. ¶ 11, Ex. 10 **[Daniels Dep. Ex. 31]** (messages dated mid-February 2023) (Daniels writes, *"I dont like the way these white people on production operate"*); **Rodriguez Dep. Tr.** at 39:1-18; **Williams Dep. Tr.** at 25:20-26:24, 43:8-44:21, 44:20-45:16. |
| 128. BGBT terminated Plaintiff's employment because she was not as experienced as Nomura, had been with the Tour for much less time than Nomura and expressed she did not want to continue with the Tour long-term. | **Gugliotta Dep. Tr.** at 35:17-38:22; **6/17 Daniels Dep. Tr.** at 235:12-239:7; **Nomura Dep. Tr.** at 19:22-20:12, 142:21-143. |

## VI. PLAINTIFF'S SIXTH CLAIM FOR RELIEF FOR RETALIATION IN VIOLATION OF THE ADA FAILS AS A MATTER OF LAW BECAUSE PLAINTIFF DID NOT ENGAGE IN ACTIVITY PROTECTED BY THE ADA AND WAS TERMINATED FOR LEGITIMATE, NON-RETALIATORY REASONS

| Uncontroverted Fact | Evidence |
|---|---|
| 129. Plaintiff did not request accommodations for her allegedly right foot/ankle injury, including | **6/2 Daniels Dep. Tr.** at 153:13-16; **6/17 Daniels Dep. Tr.** at 272:25-273:4, 304:20-307:3 (did not complain about any purported disabilities to Coffie or |

| Uncontroverted Fact | Evidence |
|---|---|
| crutches or a ladder, from BGBT Management. | Martin); **Gugliotta Dep. Tr.** at 31:1-32:14; **Coffie Dep. Tr.** at 28:13-16; **Nomura Dep. Tr.** at 96:7-13. |
| 130.  Plaintiff's only documented complaint to Gugliotta about her foot was to tell her that Nomura had run over her foot, not that she was injured as a result. | **Gugliotta Dep. Tr.** at 14:17-15:9, 31:1-13; Lerner Decl. ¶ 16, Ex. 15 **[Gugliotta Dep. Ex. 25]** (text message exchange between Gugliotta and Daniels dated February to March 2023) . |
| 131.  Plaintiff did not ask BGBT Management for medical care for her alleged right foot/ankle injury. | **6/2 Daniels Dep. Tr.** at 147:4-8; **6/17 Daniels Dep. Tr.** at 304:20-307:3 (did not complain about any purported disabilities to Coffie or Martin); **Gugliotta Dep. Tr.** at 31:1-32:14; **Coffie Dep. Tr.** at 28:13-16; **Nomura Dep. Tr.** at 94:18-21. |
| 132.  Plaintiff did not notify BGBT Management about her alleged broken acrylic nails and bleeding nailbeds. | **6/17 Daniels Dep. Tr.** at 283:3-284:21, 304:20-307:3 (did not complain about any purported disabilities to Coffie or Martin); **Coffie Dep. Tr.** at 100:24-101:6; **Gugliotta Dep. Tr.** at 30:13-24. |
| 133.  Plaintiff did not request accommodations from BGBT Management for her alleged broken acrylic nails and bleeding nailbeds, and was able to use Band-Aids. | **6/17 Daniels Dep. Tr.** at 282:8-284:21. |
| 134.  Plaintiff did not notify BGBT Management about her alleged allergic reaction until after the decision was made by BGBT to terminate Plaintiff's employment. | **6/17 Daniels Dep. Tr.** at 235:12-239:7, 304:20-307:3 (did not complain about any purported disabilities to Coffie or Martin; Lerner Decl. ¶ 16, Ex. 15 **[Gugliotta Dep. Ex. 25]** (text message exchange between Gugliotta and Daniels dated February to March 2023); **Gugliotta Dep. Tr.** at 14:17-15:9, 35:25-38:22. |
| 135.  Plaintiff did not request accommodations or medical care for her alleged allergic reaction from BGBT Management; instead, she took medication from someone in catering. | **6/17 Daniels Dep. Tr.** at 304:20-307:3 (did not complain about any purported disabilities to Coffie or Martin), 325:4-9, 328:4-332:10; **Gugliotta Dep. Tr.** at 36:25-37:15; **Nomura Dep. Tr.** at 135:20-24. |

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS

| Uncontroverted Fact | Evidence |
|---|---|
| 136. Plaintiff suspected she had been terminated before she sent Gugliotta a text about her alleged allergic reaction. | **6/17 Daniels Dep. Tr.** at 235:12-239:7. |
| 137. BGBT terminated Plaintiff because she failed and refused to comply with PPE requirements and other safety protocols; failed and refused to get along with Nomura; and resisted instructions from Nomura. | **Gugliotta Dep. Tr.** at 35:7-36:24, 32:15-33:13, 40:14-41:1 61:11-63:16, 63:22-64:2; Lerner Decl. ¶ 16, Ex. 15 **[Gugliotta Dep. Ex. 25]** (text message exchange between Gugliotta and Daniels dated February to March 2023); **Nomura Dep. Tr.** at 88:2-89:17, 89:21-22, 94:25-96:6, 99:14-17, 99:22-100:5, 100:18-103:8, 103:17-104:11, 105:1-106:6, 117:7-118:13, 118:18-120:2, 122:5-124:20, 125:1-11, 137:25-138:24, 139:9-140:13, 140:20-141:7, 144:21-147:13, 149:2-150:1, 165:20-166:16; Lerner Decl. ¶ 13, Ex. 12 **[Nomura Dep. Ex. 10]** (screenshot of February 2023 text message exchange between Daniels and Nomura); Lerner Decl. ¶ 14, Ex. 13 **[Nomura Dep. Ex. 12]** (February 2023 email from Nomura to Daniels); **Nomura Decl.** ¶ 4, Ex. A; **Coffie Dep. Tr.** at 93:13-94:13; **6/2 Daniels Dep. Tr.** at 125:2-8, 187:4-189:16, 189:19-190:23, 191:10-21, 199:22-200:11, 205:10-19, 209:22-210:15, 215:18-216:2; Lerner Decl. ¶ 8, Ex. 7 **[Daniels Dep. Ex. 7]** (February 20, 2023 email from Martin re PPE); **6/17 Daniels Dep. Tr.** at 318:8-19, 334:18-335:12, 335:17-338:23, 340:5-14; Lerner Decl. ¶ 11, Ex. 10 **[Daniels Dep. Ex. 31]** (messages dated mid-February 2023) (Daniels writes, *"I dont like the way these white people on production operate"*); **Rodriguez Dep. Tr.** at 39:1-18; **Williams Dep. Tr.** at 25:20-26:24, 43:8-44:21, 44:20-45:16. |

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS

| Uncontroverted Fact | Evidence |
|---|---|
| 138. BGBT terminated Plaintiff's employment because she was not as experienced as Nomura, had been with the Tour for much less time than Nomura and expressed she did not want to continue with the Tour long-term. | **Gugliotta Dep. Tr.** at 35:17-38:22; 6/17 **Daniels Dep. Tr.** at 235:12-239:7; **Nomura Dep. Tr.** at 19:22-20:12, 142:21-143. |

## VII.  PLAINTIFF'S SEVENTH CLAIM FOR RELIEF FOR RETALIATION IN VIOLATION OF THE FAIR LABOR STANDARDS ACT FAILS AS A MATTER OF LAW BECAUSE PLAINTIFF DID NOT ENGAGE IN ACTIVITY PROTECTED BY THE FLSA AND WAS TERMINATED FOR LEGITIMATE, NON-RETALIATORY REASONS

| Uncontroverted Fact | Evidence |
|---|---|
| 139. Plaintiff did not make a formal, specific complaint to BGBT Management asserting her rights under the FLSA or identifying alleged wage and hour violations. | **6/17 Daniels Dep. Tr.** at 286:6-293:10, 293:22-297:11; 298:4-229:9; **Gugliotta Dep. Tr.** at 14:17-17:10, 18:19-19:12, 35:7-38:22; Lerner Decl. ¶ 16, Ex. 15 **[Gugliotta Dep. Ex. 25]** (text message exchange between Gugliotta and Daniels dated February to March 2023). |
| 140. BGBT did not terminate Daniels because of complaints about FLSA violations. | **Gugliotta Dep. Tr.** at 35:7-38:22. |
| 141. BGBT terminated Plaintiff because she failed and refused to comply with PPE requirements and other safety protocols; failed and refused to get along with Nomura; and resisted instructions from Nomura. | **Gugliotta Dep. Tr.** at 35:7-36:24, 32:15-33:13, 61:11-63:16, 63:22-64:2; Lerner Decl. ¶ 16, Ex. 15 **[Gugliotta Dep. Ex. 25]** (text message exchange between Gugliotta and Daniels dated February to March 2023); **Nomura Dep. Tr.** at 88:8-89:17, 89:21-22, 94:25-96:6, 99:14-17, 99:22-100:5, 100:18-103:8, 103:17-104:11, 105:1-106:6, 117:7-118:13, 118:18-120:2, 122:5-124:20, 125:1-11, 137:25-138:24, 139:9-140:13, 140:20-141:7, 144:21-147:13, 149:2-150:1, 165:20-166:16; Lerner Decl. ¶ 13, Ex. 12 **[Nomura Dep. Ex. 10]** (screenshot of |

| Uncontroverted Fact | Evidence |
|---|---|
| | February 2023 text message exchange between Daniels and Nomura); Lerner Decl. ¶ 14, Ex. 13 **[Nomura Dep. Ex. 12]** (February 2023 email from Nomura to Daniels); **Nomura Decl.** ¶ 4, Ex. A; **Coffie Dep. Tr.** at 93:13-94:13; **6/2 Daniels Dep. Tr.** at 125:2-8, 187:4-189:16, 189:19-190:23, 191:10-21, 199:22-200:11, 205:10-19, 209:22-210:15, 215:18-216:2; Lerner Decl. ¶ 8, Ex. 7 **[Daniels Dep. Ex. 7]** (February 20, 2023 email from Martin re PPE); **6/17 Daniels Dep. Tr.** at 318:8-19, 334:18-335:12, 335:17-338:23, 340:5-14; Lerner Decl. ¶ 11, Ex. 10 **[Daniels Dep. Ex. 31]** (messages dated mid-February 2023) (Daniels writes, *"I dont like the way these white people on production operate"*); **Rodriguez Dep. Tr.** at 39:1-18; **Williams Dep. Tr.** at 25:20-26:24, 43:8-44:21, 44:20-45:16. |
| 142.  BGBT terminated Plaintiff's employment because she was not as experienced as Nomura, had been with the Tour for much less time than Nomura and expressed she did not want to continue with the Tour long-term. | **Gugliotta Dep. Tr.** at 35:17-38:22; 6/17 **Daniels Dep. Tr.** at 235:12-239:7; **Nomura Dep. Tr.** at 19:22-20:12, 142:21-143. |

Dated:  July 18, 2025

LAVELY & SINGER
PROFESSIONAL CORPORATION
MARTIN D. SINGER
MICHAEL E. WEINSTEN
MELISSA Y. LERNER

By:   *Melissa Y. Lerner*
        MELISSA Y. LERNER
Attorneys for Defendant
BIG GRRRL BIG TOURING, INC.

DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS