UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHA DANIELS,<br><br>   Plaintiff,<br><br> v.<br><br>BIG GRRRL BIG TOURING, INC., et al.,<br><br>   Defendants. | Case No. CV 24-3571 FLA (PVCx)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |

  This Report and Recommendation is submitted to the Honorable Fernando L. Aenlle-Rocha, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.
## INTRODUCTION

  Defendant Big Grrrl Big Touring, Inc. seeks discovery sanctions against Plaintiff Asha Daniels on two grounds. ("Motion," Dkt. No. 68). First, Defendant claims that Plaintiff failed to timely supplement her response to a request for production of documents concerning her mental health treatment. Second, Defendant claims that

1

Plaintiff failed to disclose data underlying an expert report, also related to Plaintiff's mental health. Plaintiff filed her opposition on August 20, 2025. ("Opp.," Dkt. No. 74) Defendant filed its reply on August 22, 2025. (Dkt. No. 78). For the reasons explained below, it is recommended that Defendant's Motion be GRANTED.

## II.
## STATEMENT OF THE CASE

Plaintiff initiated this case against Defendant and several other codefendants on September 21, 2023. (Dkt. No. 1 at 4).[1] Defendants removed the case to federal court on April 30, 2024. (Dkt. No. 1). The case raises several claims stemming from alleged abuse Plaintiff endured while working for Defendant. (*See* Dkt. No. 32-1).

### A. Plaintiff's Mental Health Records

Plaintiff seeks emotional damages in this suit. (*Id.* at 42). Accordingly, Defendant served Request for Production No. 25 on June 6, 2024:

> All DOCUMENTS that SUPPORT YOUR claim for emotional distress damages, including, without limitation, DOCUMENTS that evidence, refer to or reflect YOUR treatment by any PERSON (including, without limitation, therapists, psychiatrists, psychologists and/or other providers) and medications prescribed to YOU.

(Dkt. No. 68-2 at 3; "Lerner Decl.," Dkt. No. 68-1 at 2).

---

[1] For ease of reference, the Court uses page numbers generated by CM/ECF printed in the blue ribbon at the top of each page.

Plaintiff responded on July 5, 2024:

> Plaintiff incorporates all General Objections.  Plaintiff further objects to this request on the basis that it: (1) is vague, ambiguous, and overbroad; (2) seeks documents and information that are protected by the attorney-client privilege and attorney work product doctrine; (3) seeks documents containing protected health information subject to patient-provider privilege and confidentiality; (4) requires Plaintiff, a lay person, to form an expert legal opinion; and (5) calls for a legal conclusion.  Subject to and without waiving these objections, Plaintiff responds as follows:
>
> After reasonable search and diligent inquiry, Plaintiff will produce responsive documents within her possession, custody, and control.  Plaintiff is fully complying with this request, and no documents are being withheld for any reason.

(Opp. at 41)

In January of 2025, Plaintiff began mental health treatment with therapist Mary Marks and psychiatrist Dr. Lisa Morse.  (Opp. at 19).  In the subsequent five months, Plaintiff did not provide Defendant with any documentation pertaining to this treatment.  (*See* Mot. at 7; Lerner Decl. at 3).  Defendants took Plaintiff's deposition on June 2, 2025.  (Opp. at 6).  Plaintiff did not discuss her mental health treatment on that date.

Defendants took Plaintiff's continued deposition on June 17, 2025.  (Opp. at 93).  During that deposition, Plaintiff disclosed for the first time that she had seen a therapist

and a psychiatrist (Ms. Marks and Dr. Morse).  (*Id.* at 94).  This disclosure came just three days before the June 20 fact discovery cutoff.  (Motion at 10; Opp. at 7).[2]

On June 30, 2025, Defendant requested Plaintiff's records related to her treatment with Ms. Marks and Dr. Morse.  (Dkt. No. 68-2 at 84–85).  Receiving no substantive response, Defendant sent follow-up inquiries on July 14, 18, 21, 22, and 23, 2025.  (Lerner Decl. at 3).  In emails exchanged prior to an informal discovery conference, Plaintiff indicated that that there was "no actual dispute" because she had agreed to "produce the records."  (Dkt. No. 68-2 at 104).

The Court held an informal discovery conference to address ongoing issues in the case on August 6, 2025.  (Dkt. No. 61).  During the conference, Plaintiff's counsel shared for the first time that he learned of his client's treatment with Ms. Marks and Dr. Morse contemporaneously with Defendant during the June 17, 2025, deposition.  (Opp. at 104).  Mr. Zambrano also said that he had "made efforts" to obtain the records, but that they were generated by out of state contractors.  (*Id.*).

### B. Plaintiff's Expert Report and Its Underlying Data

In preparation for trial, Dr. Judy Ho—a clinical and forensic neuropsychologist— prepared an expert psychological evaluation of Plaintiff.  (*See* Opp. at 63–91).  In so doing, Dr. Ho assessed Plaintiff for more than six hours, using ten specific psychological test and interviews to draw her conclusions.  (*Id.* at 19).  Those tests were:

---

[2] Both parties erroneously report the fact discovery cutoff date a June 22, 2025.  (*See, e.g.*, Motion at 10; Opp. at 7).  The Court set a June 20, 2025, fact discovery cutoff in its April 16, 2026, Order Denying Amended Schedule of Pretrial and Trial Dates Worksheet (Dkt. No 42) and Continuing Pretrial and Trial Dates on the Court's Own Motion.  (Dkt. No. 43 at 3).

4

1    1. Beck Anxiety Inventory (BAI)

2    2. Beck Depression Inventory–II (BDI-II)

3    3. Beck Hopelessness Scale (BHS)

4    4. Clinical Interview 5.

5    5. Millon Clinical Multiaxial Inventory–IV (MCMI-IV)

6    6. Minnesota Multiphasic Personality Inventory-3 (MMPI-3)

7    7. Structured Clinical Interview for DSM-5 (SCID-5)

8    8. Structured Inventory of Malingered Symptomatology (SIMS)

9    9. Structured Interview of Reported Symptoms, 2nd Edition (SIR-2)

10   10. Substance Abuse Subtle Screening Inventory-4 (SASSI-4)

(*Id.* at 64). Plaintiff served the report on June 27, 2025. (*Id.* at 19).

After reviewing Dr. Ho's report, Defendant's counsel emailed Plaintiff's counsel on June 30, 2025, seeking data underlying the report. (Lerner Decl. at 3). Citing Federal Rule of Civil Procedure 26(a)(2)(B), Defendant's counsel specifically observed that "Dr. Ho did not produce any of the test results or clinical notes used in preparing her report." (Dkt. No. 68-2 at 86). Defendant's counsel requested release of that information. (*Id.*).

In the following weeks, Plaintiff supplemented her expert report with other information Defendant had requested, but not the underlying data used in the expert's testing. (Lerner Decl. at 3–5; *see also* 68-2 at 83–96). On July 25, 2025, Defendant's medical expert, Dr. James Rosenberg, conducted his medical examination of Plaintiff. (Lerner Decl. at 5). At the time, Dr. Rosenberg had not been able to review the underlying data Dr. Ho had collected during her evaluation of Plaintiff.

On July 29, 2025, Defendant's counsel again asked Plaintiff for the full set of test results gathered during Dr. Ho's evaluation. (*Id.* at 5). Defendant's counsel emphasized

that the expert rebuttal disclosure deadline was days away. (*Id.*). Again, Plaintiff declined to provide the underlying data. Plaintiff instead asked Defendant whether it had propounded a discovery request for production seeking the data in question. (*Id.* 5–6). Defendant responded by taking the position that no request for production was necessary, as the language of Rule 26 required automatic disclosure. (*Id.*). As of oral argument on the motion, Plaintiff had not produced the underlying data.

### C. Defendant's Sanctions Motion

Defendant filed its motion for sanctions on August 13, 2025. ("Motion," Dkt. No. 68). At that time, Plaintiff had not produced records related to her treatment with Ms. Marks or Dr. Morse. (*Id.* at 7).

The Court heard oral arguments on the motion on September 9, 2025. (Dkt. No. 79). During the argument, Plaintiff's counsel provided the following information about his effort to produce records responsive to Request for Production No. 25.

Plaintiff received treatment from Ms. Marks and Dr. Morse online through Zoom. While the two are based in Florida, the online service provider that connected Plaintiff with Ms. Marks and Dr. Morse is based in Texas.

Plaintiff's counsel contacted both Ms. Marks and Dr. Morse as well as the Texas-based service provider to retrieve Plaintiff's records. The service provider directed Plaintiff's counsel to Ms. Marks and Dr. Morse, telling him that they were the appropriate parties to provide the records. At the time of oral argument, Plaintiff's counsel had not heard from either Ms. Marks or Dr. Morse

Plaintiff sought online treatment through Zoom from a Texas-based service provider. Plaintiff's treatment providers, Ms. Marks and Dr. Morse, are based in Florida. Plaintiff's counsel contacted the service provider seeking Plaintiff's records. The service provider responded indicating that he would need to get records directly from the treatment providers. The treatment providers have not responded to inquiries from Plaintiff directly or her counsel.

## III.

## APPLICABLE LEGAL PRINCIPLES

### A. Scope of Discovery

Federal Rule of Civil Procedure 26(b)(1), as amended on December 1, 2015, provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

B. **Requests for Production and the Duty to Supplement**

Under the Federal Rules of Civil Procedure, one party may request from another production of responsive documents "in the responding party's possession, custody, or control." Fed. R. Civ. P. 34(a)(1). A requesting party must describe the items to be produced with "reasonable particularity." Fed. R. Civ. P. 34(b)(1). Following a reasonable investigation to locate responsive materials, a responding party must serve a written response to each request either stating that it will produce copies of the documents requested or identifying the grounds for any objection. Fed. R. Civ. P. 34(b)(2)(B). "Where a responding party does not object to a request but determines after a reasonable search that it has no responsive documents in its possession, custody or control, the better practice is for the response to affirmatively state that no responsive documents exist." *Bennett v. 38604 10th St. E., LLC*, No. CV208858, 2021 WL 5038757, at *4 (C.D. Cal. July 30, 2021)

If a party who has responded to a request for production "learns that in some material respect the disclosure or response is incomplete or incorrect," that party "must supplement or correct its disclosure or response" "in a timely manner," unless "the additional or corrective information has . . . otherwise been known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1). "The duty to disclose is triggered when the party learns that in some material respect the information is incomplete or incorrect." *Kara Tech., Inc v. Stamps.com, Inc.*, No. 05-1890, 2008 WL 11338711, at *1 (C.D. Cal. Apr. 3, 2008)

C. **Expert Disclosures**

"[A] party must disclose to the other parties the identity of any witness it may use at trial to present" expert testimony. Fed. R. Civ. P. 26(a)(2)(A). "Unless otherwise

stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). Among the specific required components of the report are "the facts or data considered by the witness in forming" her opinions. Fed. R. Civ. P. 26(a)(2)(B)(ii). "As explained in the Advisory Committee Notes to the 2010 Amendment, 'facts or data' as used in Rule 26(a)(2)(B)(ii) is to 'be interpreted broadly to require disclosure of *any material considered by the expert, from whatever source, that contains factual ingredients*. The disclosure obligation extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert.'" *Santa Clarita Valley Water Agency v. Whittaker Corp.*, No. CV1806825, 2020 WL 6260015, at *1 (C.D. Cal. Sept. 16, 2020) (citing Fed. R. Civ. P. 26 Advisory Committee's Note to 2010 Amendment) (emphasis added).

### D. **Sanctions**

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Upon a motion and hearing, a court additionally or alternatively:

    (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
    (B) may inform the jury of the party's failure; and
    (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi).

Fed. R. Civ. P. 37(c)(1).

This sanction is "self-executing." Fed R. Civ. P. 37 advisory committee's note to 1993 Amendments. It gives Rule 26 "teeth" "by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). However, "[t]he automatic nature of the rule's application does not mean that a district court *must* exclude evidence that runs afoul of Rule 26(a) or (e)." *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 740 (9th Cir. 2021) (emphasis in original). Instead, "the rule is automatic in the sense that a district court *may* properly impose an exclusion sanction where a noncompliant party has failed to show that the discovery violation was either substantially justified or harmless." *Id.* (emphasis in original). In that sense, Ninth Circuit has given district courts "particularly wide latitude" to issue sanctions under this rule. *Yeti*, 259 F.3d at 1106.

## IV.
## DISCUSSION

### A. Plaintiff's Failure to Produce Her Mental Health Records Was Neither Justified nor Harmless.

Defendant's Request for Production No. 25 sought documents supporting Plaintiff's claim "for emotional distress damages." (Lerner Decl. at 2). This included documentation related to treatment by "therapists, psychiatrists, psychologists and/or other providers." (*Id.*). Plaintiff agrees that documents related to her treatment with Ms. Marks and Dr. Morse are responsive. (*See* Dkt. No. 68-2 at 104 (explaining that was "no

actual dispute" on this issue because Plaintiff had agreed to "produce the records")). However, Plaintiff has not yet produced those records.³

Plaintiff has not justified her failure to produce the documents. In her brief, Plaintiff first tries to excuse her obligation to provide the documents by noting that her "treatment began . . . six to seven months after Plaintiff's initial discovery responses in July 2024, when no such records existed." (Opp. at 10). She then claims that she "disclosed the relevant mental health treatment as soon as it reasonably could have been known and documented." (*Id.* at 12). This is untrue. Plaintiff was obliged to supplement her responses to requests for production in a timely manner upon learning that any production was incomplete. *See* Fed. R. Civ. P. 26(e)(1). That duty triggered sometime shortly after Plaintiff began her mental health treatment in January 2025, not six months later.

Second, Plaintiff attempts to minimize the failure to produce the records by explaining that her counsel did not learn about Plaintiff's treatment until she disclosed it at her June 17, 2025, deposition. (Opp. at 104). While the obligation to supplement discovery responses rests with the party, "[c]ounsel in a litigation have legal duties to take proactive steps in supervising and searching for documents in discovery that go far beyond simply acceding to a client who fails . . . to produce or provide documents." *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, No. 22-MD-03047, 2024 WL 4125618, at *15 (N.D. Cal. Sept. 6, 2024). "Counsel cannot simply advise clients about document requests and leave it up to the client to decide whether or not to risk sanctions for failure to produce—in appropriate circumstances, counsel may need to personally conduct or directly supervise a client's collection, review, and production of responsive documents." *Id.* The fact that Plaintiff's counsel learned of Plaintiffs

---

³ The Court learned at the September 9, 2025, oral argument that the documents had not been produced. It has not received any updates on this status since then.

11

treatment and the possibility of related documents late in the game does not excuse their production.

Finally, and perhaps most importantly, Plaintiff blames Ms. Marks and Dr. Morse for Plaintiff's failure to produce the documents. Apparently, these mental health providers have not responded to her requests for those records. In some sense, this raises the question whether the requested documents are in Plaintiff's control as defined by rule 34(a)(1).[4]

"[A] party need not have actual possession of documents to be deemed in control of them." *Est. of Young Through Young v. Holmes*, 134 F.R.D. 291, 294 (D. Nev. 1991) (citation omitted). Instead, "[c]ontrol is defined as the legal right to obtain documents upon demand." *In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999) (citation omitted). Generally, the "party seeking production of the documents . . . bears the burden of proving that the opposing party has such control." *United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989). However, the parties have not briefed this issue, and it is axiomatic that a patient has the right to her own medical and mental health records. *See, e.g.*, 45 C.F.R. § 164.524. Accordingly, for the purposes of this dispute, the Court assumes that Plaintiff had legal control over the records in question.

Plaintiff has not presented sufficient evidence to show that she sought production of these records in good faith. Below is a summary of Plaintiff's efforts to obtain the records.

---

[4] Plaintiff has not formally objected to production on the ground. Still, the Court believes some consideration of this issue is appropriate.

In a July 23, 2025, email preparing for a requested informal discovery conference, Plaintiff explained that "we're making efforts to get the records. But we don't have them yet. When we do have them, we will send them to counsel." (Opp. at 99).

During the August 6, 2025, informal discovery conference, Plaintiff's counsel told the Court:

> We did not learn of the existence of [Ms. Marks and Dr. Morse] until June 17th. . . . . So we have made efforts. I'm not telling [Defendant's counsel] or anybody here that they're not entitled to the records. I'm trying to get the records. These . . . are records generated by people contracted through [the service provider], people that schedule these things. They're out of state. We are trying to get the records. We have give[n] authorizations.

(Opp. at 103).

In the declaration Plaintiff's counsel filed with Plaintiff's Opposition, Plaintiff's attested to the following information.

> 14. On June 30, 2025, Defendant's counsel contacted me requesting production of Plaintiff's mental health treatment records . . . .
> 15. I immediately began efforts to obtain the requested mental health records and confirmed that records would be produced, emphasizing repeatedly that "we have nothing to hide" and attributing the delays to provider unavailability and administrative processing.

(Opp. at 19–20),

13

At the September 9, 2025, oral argument on this Motion, Plaintiff's counsel explained the details of his and Plaintiff's efforts to retrieve the records. Plaintiff's counsel told the Court that he and Plaintiff individually contacted Ms. Marks and Dr. Morse requesting Plaintiff's records. Neither Plaintiff nor Plaintiff's counsel have heard back from them.

Plaintiff describes these communications as "reflect[ing] a good faith effort to obtain and produce the documents promptly." (Opp. at 12). Unfortunately, the evidence this Court must use to weigh the credibility of that claim does not support that proposition. Plaintiff's descriptions of her efforts are vague. They do little to educate the Court on how Plaintiff and her counsel contacted Ms. Marks or Dr. Morse; they do not clarify whether these requests were made by phone, postal mail, or email. If done in writing, Plaintiff has not produced physical copies of these communications. Nor has Plaintiff explained why—after months of receiving no response—she or her counsel have not made follow-up inquiries. The Court finds it hard to believe that mental health providers, one of whom being a registered physician, would cavalierly ignore a patient's request for her records. Plaintiff has not justified her failure to produce the responsive documents.

Nor has Plaintiff shown that her failure to produce the documents is harmless. She argues that these records can only help her; they speak to the severity of the harm she suffered. (Dkt. No. 79). This position fails to consider the fact that, upon review, Defendant may discover that the records provide information showing that Plaintiff's emotional harm was less severe than she claims. Plaintiff also claims no error because Defendant's psychological expert was able to complete his report even without the records. Lacking these records, Defendant's report is incomplete, at best. He was not able to review and consider materials related to Plaintiff's actual psychological treatment. Ultimately, these documents go right to the heart of Plaintiff's claim for emotional

14

damages. These documents are relevant. Defendant was entitled to view them to prepare its defense.[5]

In sum, sanctions under Rule 37 are appropriate considering Plaintiff's failure to produce her mental health treatment records. She should be barred from presenting at trial evidence of her treatment by mental health professionals.

### B. Plaintiff's Failure to Produce the Underlying Data Supporting Dr. Ho's Report Was Neither Justified nor Harmless.

Plaintiff argues that her expert's report complied with Rule 26 because it disclosed the ten specific tests she used and "the clinical interview and background records she reviewed." (Opp. at 14). She also claims that the report was sufficient because it "offers a thorough analysis of the test results." (*Id.*). While these positions may be true, they do little to establish that Dr. Ho's report measured up to Rule 26's bar.

Rule 26 requires an expert witness to disclose "the facts or data" she "considered . . . in forming" her opinions. Fed. R. Civ. P. 26(a)(2)(B)(ii). That information includes "any material considered by the expert, from whatever source, that contains factual ingredients." *Santa Clarita Valley*, 2020 WL 6260015, at *1 (citation omitted). These obligations exist whether or not an opposing party has requested production of this information. Plaintiff has failed to show otherwise.

---

[5] Plaintiff additionally asks this Court to consider the five factors citing *Wanderer v. Johnson*, 910 F.2d 652 (9th Cir. 1990) used for weighing discovery sanctions. (*See* Opp. at 11–12). These factors apply only when one party seeks terminating sanctions against another. Defendant does not seek terminating sanctions. The Court, accordingly, finds no reason to weigh these factors.

15

Both parties argue that *Percelle v. Pearson* supports their interpretations of Rule 26. No. 12-CV-05343, 2016 WL 6427883, at *2 (N.D. Cal. Oct. 31, 2016). In that case, defendants sought to exclude the testimony of plaintiff's expert because, as claimed here, the expert failed to properly disclose test results. *Id.* Specifically, defendants cited test results for the MMPI-2RF, a psychological text the expert had used to diagnose the plaintiff. *Id.* Plaintiff had not disclosed the results of those tests, but justified that position by, like here, noting that defendants had not requested production of the results. The *Percelle* court rejected that position. "Federal Rule of Civil Procedure 26(a)(2)(B)(ii) imposes a duty on the proponent of the expert evidence to provide 'the facts or data considered by the witness' in forming their opinion. The test results here are data that Plaintiff should have disclosed." *Id.* Because of this failure, the court prohibited Plaintiff's expert from testifying at trial about the MMPI-2RF test. *Id.*

Plaintiff reads *Percelle* as "involv[ing] a complete failure to disclose test results." (Opp. 14). She distinguishes the facts here by noting that "Dr. Ho's report specifically identifies all tests administered and provides analysis of the results." (*Id.*). However, identification of the tests and an analysis of their results is *not* the same as producing the results themselves. Dr. Ho's report does include *some* testing data. (*See id.* at 62–91). It does not, however, contain the underlying data Rule 26 contemplates. *Percelle* is directly on point, and it supports Defendant's interpretation of Rule 26. "The test results here are data that Plaintiff should have disclosed." *Percelle*, 2016 WL 6427883, at *2.

Plaintiff has not shown that her failure to produce the underlying data was justified. Rule 26's text obligated the data's disclosure. And Defendant had no obligation to serve a request for production to obtain it. Plaintiff argues that copyright and confidentiality concerns bar the data's disclosure, but Plaintiff provides no authority for this position, nor does she present any evidence to support this claim. The Court is unpersuaded.

Plaintiff's failure to produce the underlying data was not harmless. Though Plaintiff's expert never sat for a deposition, Defendant's expert has been and will be deprived of viewing the underlying data and will not be able to sufficiently rebut Dr. Ho's testimony. Without this opportunity, Dr. Rosenberg will not be able to meaningfully engage with Dr. Ho's testimony.

In sum, sanctions under Rule 37 are appropriate considering Plaintiff's failure to produce the data supporting Dr. Ho's report. Plaintiff should be barred from presenting at trial Dr. Ho's report and testimony from Dr. Ho regarding her opinions pertaining to Plaintiff's emotional distress damages.

## V.

## RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED that the District Court issue an Order: (1) accepting this Report and Recommendation, (2) granting Defendant's Motion for Sanctions (Dkt. No. 68), and (3) sanctioning Plaintiff with the evidentiary limitations described herein.

DATED: September 30, 2025

PEDRO V. CASTILLO
UNITED STATES MAGISTRATE JUDGE

17